STATE of Missouri, Respondent,

v.

Mark MOLASKY, Appellant.

No. 70615.

Supreme Court of Missouri,
En Banc.

Feb. 14, 1989.

---

**598** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Rendlen, J., concurred in result.

Gaertner, Special Judge, dissented.

Cyril M. Hendricks, Grant Smith, Jefferson City, for appellant.

William L. Webster, Atty. Gen., Elizabeth Levin Ziegler, Asst. Atty. Gen., Jefferson City, for respondent.

WELLIVER, Judge.

Appellant, Mark Molasky, was convicted of second degree attempted murder, § 564.011 and § 565.004, RSMo 1978[1], and tampering with physical evidence, § 575.100, RSMo 1978. He was sentenced

1. Section 565.004 repealed October 1, 1984.

2. Section 565.003 repealed October 1, 1984.

3. Ellen Denos was appellant's former wife, now married to Ellis Denos.

to 15 years for attempted murder and one year for tampering with physical evidence.

Appellant appealed to the Southern District Court of Appeals alleging the unconstitutionality of § 564.011, RSMo 1978. The Southern District Court of Appeals transferred prior to opinion, Mo. Const. art. V, § 11, as we have exclusive appellate jurisdiction in all cases involving the validity of a state statute. Mo. Const. art V, § 3. We decide this case as on original appeal. Mo. Const. art. V, § 10. We reverse in part and affirm in part.

I.

Appellant was named in a five count indictment on April 15, 1985. Count I alleged the first degree attempted murder[2] of Ellis and Ellen Denos[3]; Count II the attempted capital murder[4] of George "Buzz" Westfall[5]; Count III the attempted capital murder of Karen Molasky; Count IV the attempted capital murder of Harold M. and Audrey Sallee; and Count V tampering with physical evidence.

Following a change of venue from Cole County to Laclede County, a jury trial was held. At the close of the state's case the state amended Count I from first degree attempted murder to second degree attempted murder. The jury returned verdicts of not guilty on Counts III and IV, and guilty on Count V. It could not reach a verdict on Counts I and II. The trial court declared a mistrial on Counts I and II.

Following a second trial on Counts I and II, the jury returned a verdict of guilty of second degree attempted murder of Ellis and Ellen Denos, and not guilty of attempted capital murder of George "Buzz" Westfall.

II.

Appellant was serving a 32 year sentence in the Missouri State Penitentiary for con-

4. Section 565.001 repealed October 1, 1984.

5. George Westfall, Prosecuting Attorney of St. Louis County, was involved in an earlier prosecution of appellant.

victions of rape, sodomy, sexual abuse, and child abuse. He was being held for observation and was residing on the fifth floor of the hospital unit where he was a patient-worker in the psychiatric ward. A psychiatrist had examined appellant and found him to be depressed and in need of observation, but had concluded it was not necessary to transfer appellant to the mental hospital in Fulton.

In January 1984, Ricky Holt was transferred to the fifth floor. Testimony indicated Holt was like a "bodyguard" for appellant, accompanying appellant when he would leave the fifth floor to go to the law library, canteen, or other places. Holt testified appellant would buy cigarettes and food for him and other inmates. During this time appellant and Holt allegedly had conversations regarding the killing of George Westfall, Ellen Denos, and Ellis Denos.

In May 1984, Holt and appellant were transferred to the "Super–Max" unit after an incident occurred on the fifth floor. While being questioned about the fifth floor incident, Holt told the authorities about the earlier conversations with appellant, and agreed to wear a hidden microphone to try and tape a conversation with appellant on September 26, 1984. The September 26th conversation was followed by a second conversation taped on September 28, 1984.

The first taped conversation contained no direct mention of the killings, and included a dispute about $200.00 appellant's father was to send to Holt's mother. There was no evidence this money was an installment payment for the killings or in any other way connected to the plan.

The second conversation, taped on September 28, 1984, contained discussion of killing Ellis and Ellen Denos. Holt had learned he would not be released as soon as he had earlier thought, and had suggested the prosecutor's office supply him with a letter from a fictitious "Joe" saying "Joe" would do the killings since Holt was not

going to be released. That conversation included a price for the killings, $5,000, a time when the killings could be done, that the appellant wanted the bodies disposed of, and that nothing was to be done in front of his son. Appellant did not have a street address for the Denos' residence or where Ellis Denos worked, nor did appellant have a picture of the Denos.

Willie Arrington also had lived on the "Super–Max" unit in November 1984 with appellant, and testified appellant had talked to him about killing George Westfall and Ellis and Ellen Denos. Arrington testified a price had been agreed on for killing the Denos, that a shotgun would be used, and that it was not to be done in front of appellant's son. Arrington also testified he wanted money before the killings, and that a code had been worked out where Arrington would call appellant's father and say he was "Mr. Wonderful", and that he would receive $2,000. Arrington was released from prison in November 1984, but never called appellant's father.[6]

In February 1985, appellant and Holt were transferred to the S.T.U. unit, a protective custody area. Appellant had found out about the tapings, and confronted Holt, who at first denied it, but then admitted the taping had been done. Holt testified appellant wanted an affidavit signed by Holt admitting the conversations were only a joke, which Holt prepared and had notarized. Holt testified he was getting pressure from appellant to sign the affidavit, but two other inmates testified Holt had told them the affidavit was true.

### III.

While the issue of sufficiency of the evidence to sustain the conviction for attempted murder was briefed and argued, our review of the file indicates nothing in the Notice of Appeal to indicate appellant appealed from the evidence tampering conviction. Appellant received a one year sentence to run concurrently with his other

---

**6.** Arrington's testimony was admitted for the limited purpose of showing appellant's seriousness to have Ellis and Ellen Denos and George Westfall killed. The indictment limits the charges to appellant's solicitation of Ricky Holt.

sentences. No appeal being before the court, that conviction stands affirmed.

## IV.

Appellant's attacks against the attempted murder charge involve the sufficiency of the evidence and the constitutionality of V.A.M.S. § 564.011. Since we decide the case on the question of sufficiency of the evidence, we need not reach the constitutionality issue. *State ex rel. Union Electric v. Public Service Commission*, 687 S.W.2d 162 (Mo. banc 1985) *citing Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J. concurring).

Section 564.011.1 defines an attempt as "... any act which is a substantial step towards the commission of the offense. A substantial step is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense." Prior to this statute, § 556.150 contained a tougher test for attempt. This tougher language was couched in terms of preparation and perpetration, and required that "... the defendant must have taken steps going beyond mere preparation, by doing something bringing him nearer the crime he intends to commit." *State v. Thomas*, 438 S.W.2d 441, 446 (Mo.1969), or in the words of the statute "shall do any act toward the commission of such offense, but shall fail in the perpetration". This case continued an interpretation requiring the defendant to come very close to the actual commission of the offense in order to be convicted of attempt, which required a high threshold of activity before attempt could be found. For example, in *State v. Davis*, 319 Mo. 1222, 6 S.W.2d 609, 612 (1928), the court reversed an attempted murder conviction where the evidence showed a verbal agreement, delivery of a drawing and two photographs, and payment of the agreed consideration. These actions were not considered to be an overt act which moved directly toward consummation of the offense sufficient to sustain an attempt charge.

Enactment of the Missouri Criminal Code, effective January 1, 1979, changed the statutory definition of attempt. An act of perpetration was no longer required, and instead a defendant need only do an act which was a "substantial step" toward commission of the offense. *See The New Missouri Criminal Code: A Manual for Court Related Personnel, (Manual)*, 9–1, 2 (1978). This "substantial step" was defined as "... any conduct which is strongly corroborative of the firmness of the actor's intent to complete the commission of the crime." *Id.* The revision lowered the threshold needed to find the offense of attempt by shifting the emphasis away from what an actor still had to accomplish and refocusing instead upon what the actor had already done.

The wording of § 564.011 is patterned after Model Penal Code (MPC) § 5.01, which reads;

(1) *Definition of Attempt.* A person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for commission of the crime, he:

(a) purposely engages in conduct that would constitute the crime if the attendant circumstances were as he believes them to be; or

(b) when causing a particular result is an element of the crime, does or omits to do anything with the purpose of causing or with the belief that it will cause such result without further conduct on his part; or

(c) purposely does or omits to do anything that, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

(2) *Conduct That May Be Held Substantial Step Under Subsection (1)(c).* Conduct shall not be held to constitute a substantial step under Subsection (1)(c) of this Section unless it is strongly corroborative of the actor's criminal purpose. Without negativing the sufficiency of other conduct, the following, if strongly corroborative of the actor's criminal purpose, shall not be held insufficient as a matter of law:

(a) lying in wait, searching for or following the contemplated victim of the crime;

(b) enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission;

(c) reconnoitering the place contemplated for the commission of the crime;

(d) unlawful entry of a structure, vehicle or enclosure in which it is contemplated that the crime will be committed;

(e) possession of materials to be employed in the commission of the crime, that are specially designed for such unlawful use or that can serve no lawful purpose of the actor under the circumstances;

(f) possession, collection or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for its commission, if such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances;

(g) soliciting an innocent agent to engaged in conduct constituting an element of the crime.

Model Penal Code § 5.01 (1985)[7].

The Comments to § 564.011 expand subsection (g) of the Model Penal Code dealing with soliciting an agent. It reads:

(g) soliciting an agent, whether innocent or not, to engage in conduct constituting an element of the offense or an attempt to commit such offense or which would establish the agent's complicity in its commission or attempted commission.

Subsection (g) was designed to cover all cases of criminal solicitation since solicitation was not enumerated in the Code as a specific offense[8]. If the other requirements of attempted liability were met, acts of solicitation *could* constitute a substantial step. *Manual, supra*, at 9–2 (emphasis added).

V.

Appellant sought review in this Court alleging, among other things, the insufficiency of the evidence to sustain the conviction for attempted murder. In charging appellant with attempt, the State was required to prove two elements; 1) a purpose to commit the offense, and 2) the doing of an act which is a substantial step toward the commission of that offense. The essence of "substantial step" is that the step must be "strongly corroborative of the firmness of the actor's intent". The conduct must be indicative of the defendant's purpose to complete the offense. What act or conduct will constitute a substantial step will depend on the facts of the particular case. *State v. Walker*, 743 S.W. 2d 99, 102 (Mo.App.1988).

In assessing the sufficiency of the evidence, we view the evidence and reasonable inferences in the light most favorable to the verdict and disregard contrary evidence and inferences. *State v. Marvel*, 756 S.W. 2d 207, 209 (Mo.App.1988).

The difficulty here lies in Missouri not having a separate criminal solicitation crime. Instead, the crime of solicitation is part of the general attempt statute, and requires the elements necessary for attempt. While the Comments to § 564.011

**7.** A number of jurisdictions have adopted the "substantial step" framework. *See* Alaska Stat. § 11.31.100 (Supp.1988); Ark.Code Ann. § 5–3–201; Colo.Rev.Stat. § 18–2–101; Conn. Gen.Stat. § 53a–49 (1987); Del.Code Ann. tit. 11, § 531 (1987); Ga.Code Ann. § 16–4–1 (1988); Haw.Rev.Stat. § 705–500 (1985); Ill.Ann.Stat. ch. 38, para. 8–4 (Smith–Hurd Supp.1988); Ind. Code Ann. § 35–41–5–1 (Burns 1985); Me.Rev. Stat.Ann. tit. 17–A, § 152 (1983); Minn.Stat. Ann. § 609.17 (West 1987); N.H.Rev.Stat.Ann. § 629:1 (1986); N.J.Stat.Ann. § 2C:5–1 (West 1982); N.D.Cent.Code § 12.1–06–01 (1985); Ohio Rev.Code Ann. § 2923.02 (Baldwin 1986); Or.Rev.Stat. § 161.405 (1985); Pa.Stat.Ann. tit.

18, § 901 (Purdon 1983); Wash.Rev.Code Ann. § 9A.28.020 (1988); Wyo.Stat. § 6–1–301 (1977).

**8.** A number of jurisdictions have adopted separate solicitation offenses. *See* Del.Code Ann. tit. 11, §§ 501–5 (1987); Ga.Code Ann. § 16–4–7 (1988); Haw.Rev.Stat. § 705–510 (1985); Ill. Ann.Stat. ch. 38, para. 8–1 (Smith–Hurd Supp. 1988); Me.Rev.Stat.Ann. tit. 17–A, § 153 (1983); N.H.Rev.Stat.Ann. § 629:2 (1986); N.D.Cent. Code § 12.1–06–03 (1985); Or.Rev.Stat. § 161.435 (1985); Pa.Stat.Ann. tit. 18, § 902 (Purdon 1983); Wash.Rev.Code Ann. § 9A.28.030 (1988); Wyo.Stat. § 6–1–302 (1977).

make it clear solicitation can be the substantial step necessary for sustaining an attempt conviction, we have found no decisions of this Court applying the statute to such a case.

It was shown at trial appellant had the necessary purpose to commit the crime, and we do not dispute this finding. Ellis and Ellen Denos were in the process of adopting appellant's son, which appellant opposed for various reasons. With Ellis and Ellen Denos murdered, testimony indicated appellant believed his parents would then be able to secure custody.

For the remaining element, the state alleges the solicitation of Ricky Holt by appellant to commit the murders constituted an act which was a substantial step toward the commission of the murders of Ellis and Ellen Denos.

Although no decisions of this court have applied the current statute to the offense of murder, a number of jurisdictions have examined whether solicitation can be the substantial step necessary to convict. *State v. Otto*, 102 Idaho 250, 629 P.2d 646 (1981), and *State v. Kilgus*, 128 N.H. 577, 519 A.2d 231 (1986) represent both sides of this question.

In *Otto* the Idaho Supreme Court held solicitation accompanied with a cash payment insufficient to uphold an attempted murder charge. In *Kilgus* the New Hampshire Supreme Court declined to follow *Otto* and affirmed a conviction for attempted murder based upon a solicitation, instructions regarding disposal of the body, identification of the victim, and the payment of money.

One element common to both these lines of cases is that something beyond conversation has occurred. An act, whether it be making a cash payment, delivering a weapon, visiting a crime scene, waiting for a victim, etc., has accompanied the conversation, thus evidencing the seriousness of purpose, and making the planned crime

closer to fruition. Respondent refers us to *State v. Manchester*, 213 Neb. 670, 331 N.W.2d 776 (1983), yet in *Manchester* the defendant did considerably more, including setting aside money, arranging for a weapon and scope, and showing the victim's residence, place of business, and routes of travel.

Factually, this case is different due to appellant's incarceration, which poses limits as to what appellant could do other than talk with a fellow inmate. Still, there are a number of things which could support the conviction which are not present here. For instance, although payment had been talked about, no money changed hands. There was only a general description of the intended victims, and no picture was presented to Holt. Likewise, no addresses were exchanged, either for the business or for the residence.

Here the solicitation was not accompanied by any other corroborative action. True, there was talk about the killings, the money involved, the type of weapon involved, etc., but there was no further act after this conversation which indicated any seriousness of purpose. For example, testimony established appellant had made no concrete arrangements for payment, no money changed hands, and Holt never received a picture or similar identification of the victims. Testimony also showed conversations of this type are an everyday event in prison, discussed freely. We do not think the facts establish this solicitation as a substantial step necessary to sustain the attempted murder conviction. Missouri cases indicate a substantial step is evidenced by actions, indicative of purpose [9], not mere conversation standing alone.

While we think the facts are insufficient here, we do not suggest solicitation can never be the substantial step necessary to support an attempt charge. Our statutory design has solicitation included in the crime of attempt, and given factually different

9. *See e.g., State v. Molkenbur,* 723 S.W.2d 894 (Mo.App.1987) (defendant grabbed victim, trying to pull her back into an apartment), *State v. Thomas,* 670 S.W.2d 138 (Mo.App.1984) (defendant entered victim's apartment, threatening her with knife), *State v. Walker,* 743 S.W.2d 99 (Mo. App.1988) (defendant carried victim to back of van, restraining her while her clothing was being removed).

circumstances, solicitation could support an attempt charge. Here however, this burden has not been met.

The conviction for tampering with physical evidence is affirmed. The conviction for second degree attempted murder is reversed.

BILLINGS, C.J., and BLACKMAR, ROBERTSON and HIGGINS, JJ. concur.

RENDLEN, J., concurs in result.

GAERTNER, Special Judge, dissents.

COVINGTON, J., not participating because not a member of the Court when cause was submitted.