

# Missouri Court of Appeals

## Southern District

### Division One

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| vs. | ) | No. SD33256 |
| | ) | |
| BLAEC JAMES LAMMERS, | ) | FILED: March 31, 2015 |
| | ) | |
| Appellant. | ) | |

APPEAL FROM THE CIRCUIT COURT OF POLK COUNTY

Honorable William J. Roberts, Judge

**AFFIRMED**

Blaec Lammers, age 20, had a history of self-harm, assault on others, and psychiatric hospitalizations. After he bought two knock-off assault rifles, his mother contacted law enforcement. Police interviewed Lammers, which led to charges that he purchased weapons, practiced with them, and planned to shoot unknown persons at the Bolivar Walmart. He waived a jury and was found guilty of first-degree assault (attempt) and armed criminal action.[1]

---

[1] He was acquitted of a third felony charge.

On appeal, Lammers (1) charges error in not suppressing his police interview, and (2) claims there was insufficient evidence that he intended to shoot anyone or took a substantial step toward doing so. Per our standard of review and deference to the factfinder, we deny both points and affirm the convictions.

## Principles of Review

In reviewing sufficiency of evidence, we credit all evidence and inferences favorable to the state and reject all others. ***State v. Porter***, 439 S.W.3d 208, 211 (Mo. banc 2014). We do not re-assess Lammers' guilt ourselves, but decide only "whether, in light of the evidence most favorable to the State, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt." ***Id***. (internal quotation marks omitted).

Similarly, we consider only evidence and inferences that support a trial court's suppression ruling, disregarding all other evidence or inferences. ***State v. Gaw***, 285 S.W.3d 318, 319 (Mo. banc 2009). We review issues of law *de novo. **Id***. at 320.

Accordingly, we frame facts and inferences throughout this opinion as we must view them – one-sided, so to speak, in favor of the state.

## Police Interview

Lammers' mother learned by phone call that a man was storing rifles for her son. Worried, she called Lammers to remind him he should not have firearms. He replied, "I know." Mrs. Lammers then found a rifle-purchase receipt while doing her son's laundry that night.

She went to the sheriff's office the next day, showed the receipt, discussed her son's mental illness, and expressed her concerns. She suspected Lammers had been

"cheeking" his medication; he was becoming increasingly violent. The sheriff's office contacted the police department and requested a wellbeing check.

Officers found Lammers and his girlfriend at a Sonic drive-in and relayed Mrs. Lammers' concern. Lammers said he was taking his medication and confirmed his purchase of two rifles. When asked if he would come to the police station to talk, Lammers agreed, walked to the police car, and sat in the front passenger seat. He was not restrained or placed under arrest at Sonic or while riding to the police station.

At the station, officers walked Lammers to the interview room and checked him for weapons, but did not handcuff or restrain him or take any of his personal items. An officer told Lammers he was not under arrest, but verbally gave *Miranda* warnings[2] that Lammers said he understood. A recorded interview followed which Lammers sought to suppress before trial. The court denied that motion and admitted the interview at trial over Lammers' objection.[3]

Lammers charges that his interview was "tainted by his unlawful, de facto arrest," citing Supreme Court cases holding that unlawful arrest or detention for interrogation may require suppression of statements despite *Miranda* warnings.[4]

---

[2] *See **Miranda v. Arizona***, 384 U.S. 436 (1966).

[3] Lammers' point cites only the motion to suppress, which of itself "preserves nothing for appeal, and ordinarily, a point relied on that refers only to a ruling on such motion is fatally defective." **State v. Allison**, 326 S.W.3d 81, 87 (Mo.App. 2010). We exercise our discretion to construe the flawed point as also challenging admission of this evidence at trial. **Id**.

[4] *See **Dunaway v. New York***, 442 U.S. 200 (1979); **Brown v. Illinois**, 422 U.S. 590 (1975); **Davis v. Mississippi**, 394 U.S. 721 (1969).

We find these cases inapposite because Lammers fails to convince us he was unlawfully arrested or detained.

"A custodial interrogation occurs only when the suspect is formally arrested or is subjected to arrest-like restraints. A person who voluntarily accompanies officers to the police station for questioning is not subject to arrest-like restraints." *State v. Glass*, 136 S.W.3d 496, 508-09 (Mo. banc 2004) (citation omitted). *See also State v. Hill*, 247 S.W.3d 34, 48 (Mo.App. 2008).

Lammers rode un-cuffed in the police car's front seat and kept his phone and personal items during the interview, none of which would have occurred had he been under arrest. "Treatment with the consideration due one who has volunteered to be interviewed is the kind of latitude [that] is clearly inconsistent with custodial interrogation." *Id*. (internal quotation marks omitted).

That the interview occurred at a police station does not demonstrate custody. *Id*. at 49. Lammers was told he was *not* under arrest at the outset of the interview, throughout which his freedom of movement was not restrained by handcuffs or otherwise. *See id*.

Further, the record does not indicate Lammers was prevented from stopping the interview at any time. *See State v. Seibert*, 103 S.W.3d 295, 301 (Mo.App. 2003). "Even if a person is a suspect in a crime, there is no custodial interrogation when he is not under arrest or otherwise restrained of his liberty at the time of the questioning." *Id*.

All in all, the notion that Lammers was "arrested" for interrogation is not supported by the record as we must view it.

Lammers' complaint about "improper, incomplete, and incomprehensible Miranda warnings" fares no better. He was not in custody, so *Miranda* did not apply. ***Seibert***, 103 S.W.3d at 300. Nonetheless, the trial court found Lammers was advised of those rights, said he understood them, then gave a free and voluntary statement. The record supports this ruling and, in turn, the suppression ruling and admission of the evidence. ***State v. Schnick***, 819 S.W.2d 330, 336 (Mo. banc 1991). Our focus is whether Lammers understood the warnings themselves, which the trial court found, not whether he appreciated all possible consequences of speaking to the police. ***State v. Powell***, 798 S.W.2d 709, 713 (Mo. banc 1990); ***State v. Duke***, 427 S.W.3d 336, 341 (Mo.App. 2014). Point denied.

## Sufficiency of Evidence

Lammers contends that the "attempt" evidence cannot support his conviction for first-degree assault, which was predicate to his armed criminal action conviction, so we must reverse both.

The state charged Lammers with "attempting to kill or cause serious physical injury to unknown persons" at Walmart. *See* § 565.050.[5] Section 564.011 governs the law of attempt in Missouri, including offenses like first-degree assault that equate attempt with the completed crime. ***State v. Withrow***, 8 S.W.3d 75, 79-80, 82 (Mo. banc 1999). Attempt's only elements are (1) *purpose* to commit the underlying offense, and (2) some act which is a *substantial step* toward committing the offense. ***Id***. at 78; ***State v. Molasky***, 765 S.W.2d 597, 601 (Mo. banc 1989).

---

[5] Statutory citations are to RSMo 2000.

*Purpose*

Lammers claims no evidence showed he had a purpose ("conscious object" per ***State v. Whalen***, 49 S.W.3d 181, 187 (Mo. banc 2001)) to kill or seriously injure anyone. We cannot agree if we honor our standard of review. To summarize just three significant statements by Lammers when interviewed:

- He thought about shooting up the Walmart where he bought his guns.

- When asked about his "plan from start to finish," he indicated he would walk in the front door and start shooting. "Just walk in, start shooting, and wait till the police got there," then hand himself over.

- He said a movie theater "crossed my mind. But Walmart was probably the main one because if I ran out of ammo, all I had to do was break the glass."

On appeal, Lammers minimizes such evidence, focusing instead on testimony favorable to his defense. This ignores our standard of review and the trial court's right to believe some, all, or none of witness testimony. ***J.A.R. v. D.G.R.***, 426 S.W.3d 624, 631 (Mo. banc 2014); ***State v. Massa***, 410 S.W.3d 645, 659 (Mo.App. 2013). Disregard for our standard of review robs Lammers' arguments of any persuasive force. ***J.A.R.***, 426 S.W.3d at 632; ***Massa***, 410 S.W.3d at 660.

Lammers cites first-degree assault reversals in ***State ex rel. Verweire v. Moore***, 211 S.W.3d 89 (Mo. banc 2006), and ***State v. Dublo***, 243 S.W.3d 407 (Mo.App. 2007), but makes no serious effort to align this case with those, which we find distinguishable.[6] Ours is more like ***State v. Reese***, 436 S.W.3d 738, 741-42

---

[6] Seemingly *no* Missouri case relevant to this one, except ***Dublo***, cites ***Verwiere*** without distinguishing it. *See* ***State v. Rayburn***, 2014 WL 5839293, at *2-3 (Mo.App. Nov. 12, 2014); ***State v. Reese***, 436 S.W.3d 738, 742 & n.4 (Mo.App. 2014) (also distinguishing ***Dublo***); ***State v. Hill***, 408 S.W.3d 820, 823-24

6

(Mo.App. 2014), and other cases where police intervened in time. ***Verweire*** distinguished such situations, 211 S.W.3d at 92, and ***Dublo*** explicitly followed ***Verweire***. 243 S.W.3d at 410.

The evidence was not insufficient as to attempt's "purpose" prong.

*Substantial Step*

Lammers baldly asserts "[t]here was no substantial step to carry out any intent to harm anyone." To decide if the record compels this conclusion, we must consider what a "substantial step" may be in these circumstances.

Neither party cites any case remotely like this, where a defendant "purchased weapons, practiced with the weapons, and planned to shoot persons" as this information charged, but had harmed no one yet. Our search outside Missouri yielded only that buying a gun "to use in a planned crime is a substantial step" according to ***Kash v. U.S.***, 112 F. App'x 518, 521 (7th Cir. 2004), and scant legal commentary of little practical help.[7] Thus, we turned back to our statute and historical observations from ***Molasky***.

---

(Mo.App. 2013) (also distinguishing ***Dublo***); ***Doss v. State***, 376 S.W.3d 719, 722 (Mo.App. 2012); ***State v. Davies***, 330 S.W.3d 775, 792 (Mo.App. 2010); ***State v. Rollins***, 321 S.W.3d 353, 362 (Mo.App. 2010); ***State v. McDaniel***, 254 S.W.3d 144, 146 (Mo.App. 2008).  Given recent decisions by our Missouri Supreme Court, we now share Judge Spinden's "doubts concerning *Verweire's* correctness." ***Dublo***, 243 S.W.3d at 410-11 (Spinden, J., concurring). In particular, ***Verweire***'s concern with facts and inferences *contrary* to the result, 211 S.W.3d at 92-93, seems at odds with the appellate deference called for in ***Porter*** and recent opinions like ***State v. Jackson***, 433 S.W.3d 390 (Mo. banc 2014), ***In re Adoption of C.M.B.R.***, 332 S.W.3d 793 (Mo. banc 2011), and ***White v. Dir. of Revenue***, 321 S.W.3d 298 (Mo. banc 2010).

[7] That said, for those with interest, a "mini-symposium" recently addressed this attempt scenario derived from a popular novel:

Section 564.011, effective since 1979 and derived from the Model Penal Code, defines "substantial step" as "conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense." ***Molasky***, 765 S.W.2d at 600. Previously, "a tougher test for attempt" had been "couched in terms of preparation and perpetration" and required proof the actor went "beyond mere preparation." ***Id***. (some quotation marks omitted). Prior to 1979, "the defendant [had] to come very close to the actual commission of the offense in order to be convicted of attempt." ***Id***; *see also* ***Withrow***, 8 S.W.3d at 78 (attempt previously harder to prove; state had to show defendant "nearly approached consummation of the offense, not just a substantial step toward the completed offense").

---

> Ex-husband, divorced for about a year, travels to Chicago where his ex-wife lives. He first obtains a loaded gun from the home of his deceased father, and then drives to the ex-wife's house, where from bushes next to the house he sees her in the kitchen and the man he suspects is the ex-wife's lover giving the husband's female toddler a bath. The ex-husband turns away from the window but is arrested the next day after the gun is discovered on him by a police officer.... [A neighbor] saw the ex-husband in the bushes and reported it to the ex-wife, who now adamantly wants charges pressed against the ex-husband. Should the local prosecutor charge him for attempted murder of the wife and/or the suspected lover?

Robert Batey, *Attempt and Reckless Endangerment in Saul Bellow's Herzog*, 9 Ohio St. J. Crim. L. 749 (2012). One writer "pragmatically decides that a court applying the Model Penal Code's definition of attempt could find Herzog guilty of attempted murder but should not, on prudential grounds"; another "criticizes the Model Penal Code test for condemning someone like Herzog, advocating a more restrictive test in order to preserve a larger sphere of individual liberty"; a third "would find Herzog guilty of attempt, because of the resolve to kill with which he started"; two others focus on abandonment issues. ***Id***. at 749-50. Unfortunately, these policy-heavy papers aid us little because "we are an error-correcting court, not a policy-making court." ***Saint Francis Med. Ctr. v. Watkins***, 413 S.W.3d 354, 357 (Mo.App. 2013).

The 1979 revision, still effective today, lowered the threshold for proving attempt "by shifting the emphasis away from what an actor still had to accomplish and refocusing instead upon what the actor had already done." **Molasky**, 765 S.W.2d at 600; *see also* **State v. Bates**, 70 S.W.3d 532, 537 (Mo.App. 2002); **State v. Graham**, 2 S.W.3d 859, 863 (Mo.App. 1999) (overruled in other respects by **Withrow**, 8 S.W.3d at 79).

Influential Code comments confirm this shift. *See* Comment to 1973 Proposed Code, reprinted with § 564.011 VAMS.[8] The policy reason underlying this shift in emphasis, "as stated in the Model Penal Code, is that the law is not interested merely in punishing dangerous acts, but also in neutralizing dangerous individuals." **Id**.

Thus, we summarize and focus on what Lammers already had done. He viewed a film about the Columbine school shooting, wondered what would happen if he did that, then bought ammunition and two "assault rifles, like AR-15s." Having never shot a gun, he had an acquaintance teach him how to load, sight, and fire. He practiced shooting. He lied to others about the guns. He kept everything secret from his parents, which was understandable if, as he later said, "my mom thinks that, like, a Virginia Tech is going to happen with me."

If Lammers intended to shoot people (as the record supports, *see supra*), a reasonable factfinder could deem his conduct corroborative and a "substantial step."

---

[8] When our legislature adopts a model act, comments of the drafting committee often will be influential in interpreting the statutory language. **State v. Passley**, 389 S.W.3d 180, 186 n.7 (Mo.App. 2012). *See also* **State v. Ecford**, 239 S.W.3d 125, 128 (Mo.App.2007) (when construing uniform code, comments accompanying it carry great weight).

More precisely, we cannot as a matter of law declare that no reasonable factfinder could so find.[9]

*Corpus Delecti*

Lammers also claims a violation of the *corpus delecti* rule – the state's burden to prove "a crime was committed by *someone,* independent from a defendant's extrajudicial statements." **State v. Madorie**, 156 S.W.3d 351, 353-54 (Mo. banc 2005). The rule is traced to several 17th-century English murder cases where accuseds "confessed to the killing, were hanged, and the victims were later found still alive." **Id**. at 354.

The rule's threshold is low. "'All that is required is evidence of circumstances tending to prove the corpus delicti corresponding with the confession. *Slight corroborating facts* are sufficient to establish the corpus delicti.'" **Id**. at 355 *(quoting* **State v. Hahn**, 640 S.W.2d 509, 510 (Mo.App.1982)). Independent evidence that corresponds or interrelates with circumstances described in the defendant's statement will suffice. **State v. Litterell**, 800 S.W.2d 7, 10 (Mo.App. 1990).

---

[9] We do not reweigh or second-guess whether this corroborative evidence is "strongly" so (§ 564.011.1). The strength and persuasiveness of *prima facie* proof is uniquely for the factfinder, to which we defer given its better position to assess witness credibility and weight of evidence. *Cf.* **J.A.R.**, 426 S.W.3d at 626 & n.4, and **C.M.B.R.**, 332 S.W.3d at 815-16, each distinguishing between factfinder determination and appellate review of matters to be proved "by clear, cogent, and convincing evidence." At any rate, evidentiary weight "is not a matter reviewable by an appellate court" in a criminal appeal. **State v. Morgan**, 453 S.W.2d 932, 934 (Mo. 1970). "This court determines only whether there was substantial evidence to support the verdict, and there obviously was." **Id**.

Here, witnesses and other independent proof that Lammers bought, practiced with, and concealed the guns corresponds and interrelates with his admissions to establish *corpus delicti.*

## Conclusion

It was not error to admit Lammers' interview at trial. The record as we must view it supports the convictions. These are the only issues before us. We affirm the judgment and convictions.

DANIEL E. SCOTT, J., – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

WILLIAM W. FRANCIS, P.J./C.J. – DISSENTS, IN SEPARATE OPINION



# Missouri Court of Appeals

## Southern District

### Division One

| | | | |
|---|---|---|---|
| STATE OF MISSOURI, | ) | | |
| | ) | | |
| Respondent, | ) | | |
| | ) | | |
| vs. | ) | No. SD33256 | |
| | ) | | |
| BLAEC JAMES LAMMERS, | ) | FILED: March 31, 2015 | |
| | ) | | |
| Appellant. | ) | | |

## DISSENTING OPINION

I respectfully dissent. I dissent only because of my concern that if the unusual holding in *State ex rel. Verweire v. Moore*, 211 S.W.3d 89 (Mo. banc 2006), is still the law in this state with respect to the evidence required to support a first-degree assault conviction, the decision of the principal opinion here does not follow that precedent. However, I share the same concerns about the *Verweire* decision as expressed by Judge Spinden in his concurring opinion in *State v. Dublo*, 243 S.W.3d 407 (Mo.App. W.D. 2007).

In *Verweire*, defendant grabbed the victim's neck, held a gun to the victim's head and chest, announced he was going to blow his victim's head off, and then withdrew. 211 S.W.3d at 91. Our supreme court held this was not sufficient evidence to support a conviction of first-degree assault. *Id.* at 93.

In *Dublo*, defendant grabbed the victim by the neck, held a knife to his neck, said he was going to kill victim, but let him go before doing so. 243 S.W.3d at 408. Our Western District, following and applying the decision in *Verweire*, held this was not sufficient evidence to support a conviction for first-degree assault. *Id.* at 410.

The facts on the record before us are far less egregious. Lammers had psychiatric issues requiring medication. On November 12, 2002, he purchased a .22 caliber military-style long rifle from Walmart, along with ammunition. On November 13, 2002, he purchased a Windham Weaponry .223 caliber rifle from Walmart with additional ammunition. There is no claim by the State that these purchases were unlawful.

After these purchases, Lammers and his girlfriend went to a friend's apartment and the three of them traveled to a farm for target practice using soda cans. At the conclusion of the target practice, Lammers asked the friend to take the rifles to the friend's apartment because Lammers did not want the guns at his house. Lammers subsequently took the guns and ammunition to the house of his girlfriend's father for safekeeping by the father.

The girlfriend's father called Lammers' mother on November 15, 2012, to let her know he was storing the guns for Lammers. When Lammers was confronted by his mother as to whether or not he had purchased the guns, he admitted it. When she reminded him that he should not have guns he replied, "Yes, I know."

On November 15, 2012, Lammers' mother drove to the sheriff's department and expressed her concern regarding her son's mental illness and his possession of guns. She wanted the sheriff's department to be aware that Lammers had purchased the guns, but not arrest him. She was afraid Lammers would try to kill himself, but was not concerned he would try and hurt others. She also wanted verification Lammers was taking his medication.

The record before us is silent as to evidence of any intent by Lammers to kill or cause physical injury to any person before law enforcement officers made contact with him.

Law enforcement subsequently located Lammers at a Sonic Drive-in with his girlfriend. After brief questioning there, Lammers assured the officer that he was taking his medication. When the officer asked Lammers to accompany him to the police station to answer more questions, Lammers willingly complied and rode in the front-passenger seat with the officer.

Upon initial questioning at the police station, Lammers advised officers that he had purchased the guns so he could go hunting. He did not have a hunting license. After questioning and prompting by multiple officers, Lammers responded that he, at some point, had *thoughts* of shooting people at a movie theater, but that he might run out of ammunition so he *thought* about shooting people at Walmart. After that questioning, Lammers was arrested and charged with the offenses of which he was convicted.

We may infer that the defendant in *Verweire* *thought* about shooting victim—he pulled out a gun and announced a present intention to do so. Similarly, the defendant in *Dublo* must have *thought* about killing victim—he pulled out a knife, shoved it against victim's throat, and announced a present intention to kill victim.[1] However, even evidence of such *thoughts* is insufficient evidence of intent under *Verweire* and *Dublo*—rather, there must be a trigger-pulling

---

[1] Culpable mental state is generally not susceptible to proof by direct evidence, and may be shown by circumstantial evidence. *Dublo*, 243 S.W.3d at 409.

3

event[2] (as **Verweire** indicates, and **Dublo**'s holding impliedly recognizes), to meet the heightened showing required for the "very specific intent on the part of the actor to cause serious physical injury . . . [where there is no] injury to the victim[.]" **Dublo**, 243 S.W.3d 409 (internal quotation and citation omitted); *compare with* **State v. McDaniel**, 254 S.W.3d 144 at 146 (Mo.App. E.D. 2008) (recognizing that the intervention of third parties does not preclude a finding of intent for first-degree assault where a trigger-pulling event is otherwise imminent).

The defendants in **Verweire** and **Dublo** both possessed deadly weapons, positioned them into deadly stances, exerted unlawful physical force upon victims, and announced present intentions to use weapons to kill identified victims. Because the defendant in **Verweire** did not try to pull the trigger, and the defendant in **Dublo** did not try to pull his knife across victim's throat, those defendants lacked the required coincident culpable mental state required for first-degree assault.

The record here is that Lammers had a history of psychiatric problems, lawfully purchased firearms and ammunition, went target shooting with a friend, then deposited the firearms with his girlfriend's father. He later agreed, upon prompting by police, that at some point he *thought* about shooting people at a movie theater and at Walmart. There is simply no trigger-pulling event in the record before us.

---

[2] As the court stated in **Verweire**:

> It is undisputed that when Verweire aimed the pistol at Crompton, he did not pull the trigger and that he soon retreated from the altercation without ever having attempted to fire the pistol. Under these circumstances, he did not have the intent to cause serious physical injury, but merely threatened to do so. This is not a case like those in which the defendant was convicted because he would have injured the victim but for the malfunctioning of his weapon or the intervention of law enforcement.

**Verweire**, 211 S.W.3d at 92. *Also see* **Dublo**, 243 S.W.3d at 409:

> Mr. Dublo held a knife close to the necks of the two victims but did not injure or attempt to injure either one with the knife. Even taking the evidence in the light most favorable to the State, it is insufficient to support the intent necessary to support a conviction on first-degree assault.

4

If *Verweire* and *Dublo* are in fact the law in our state with respect to what evidence is required to support a conviction for assault in the first degree, then it is simply inconsistent to conclude there was sufficient evidence to support Lammers' convictions based upon the record before us.

I would reverse Lammers' convictions only if the law as expressed in *Verweire* is still in fact the law in our state as to what evidence is required to support a conviction for first-degree assault.

WILLIAM W. FRANCIS, JR., C.J./P.J. – Dissenting Opinion Author