STATE of Missouri, Respondent,

v.

Jerome BATES, Appellant.

No. WD 59307.

Missouri Court of Appeals,
Western District.

Jan. 22, 2002.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 5, 2002.

Application for Transfer Denied
April 23, 2002.

Jeremiah W. (Jay) Nixon, Atty. Gen., Linda Lemke, Asst. Atty. Gen., Jefferson City, for Respondent.

Emmett D. Queener, Asst. Public Defender, Columbia, for Appellant.

Before EDWIN H. SMITH, P.J., and HOWARD and HOLLIGER, JJ.

VICTOR C. HOWARD, Judge.

A jury convicted Jerome Bates of attempted statutory rape in the second degree and attempted statutory sodomy in the second degree. He brings two points on appeal. In his first point, he alleges that the evidence was insufficient to show he took a "substantial step" toward the commission of those offenses. Specifically, he contends that "his correspondence from prison with the victim, without more, was insufficient to be strongly corroborative of the firmness of his purpose to complete the commission of the offense upon his release from prison." We agree. Finding his first point dispositive, we do not address his second point.

The judgment entered upon defendant's convictions is reversed and defendant is ordered discharged.

### Background

On July 13, 2000, a grand jury indicted defendant on one count of attempted statutory rape in the second degree and one count of attempted statutory sodomy in the second degree. On October 3, 2000, the case went to trial. Just prior to trial, the Cole County prosecutor requested leave to file a Second Amended Substitute Information in Lieu of Indictment. This information charged defendant with the same charges as set forth in the indictment but narrowed the time frame for when the crime occurred to a one-year time period and added victim's date of birth. The State charged defendant with attempted statutory rape and attempted statutory sodomy based upon the following actions of defendant:

[B]etween June 27, 1998 and June 27, 2000,[1] . . . while incarcerated at the Missouri Department of Corrections, in conversations and letters to [victim], a child under the age of 16, [defendant] repeatedly solicited promises from [victim] that she would have sexual intercourse, anal intercourse and oral intercourse with him upon his scheduled release from prison on June 27, 2000, and supplied her with pornographic pictures and handwritten instructions of how he would have sex with her, and such conduct was a substantial step toward the commission of [the crimes], and was done for the purpose of committing such crimes.

At trial, the State presented evidence including sexually explicit letters, pictures cut from magazines, and pamphlets, which victim testified she began receiving at the age of twelve from defendant while he was in prison. Often times, defendant would send the sexually explicit materials to victim hidden in cards and between paper glued together. Victim testified that defendant had been a father figure to her for most of her life. She and her mother often visited defendant while he was in prison and corresponded with him both on the phone and through letters. Victim did not tell anyone about the sexually explicit correspondence she had with defendant until the day approached when he would be released from prison. She then became

---

1. Although the second amended information is not a part of the record on appeal, we believe from the prosecutor's discussion with the court at the start of trial that this date was changed to "between June 27, *1999*, and June 27, 2000."

scared and informed a counselor of her fears. The counselor contacted the police.

The officer who interviewed victim also questioned defendant about the materials. Defendant at first denied sending victim anything and claimed instead that the materials were intended for victim's mother. After the officer explained the problems with defendant's explanations to him, defendant refused to make eye contact and answered, "I don't know." Defendant was never released from prison before he was charged with the crimes. During the pendency of his case, defendant wrote a letter to the prosecutor acknowledging that he sent victim the letters and materials. He claimed that he did so only because victim had a friend that was receiving letters and naked pictures from a man in prison, and victim had become jealous of this friend. Defendant claimed that he sent the materials to victim "just so she can show her friend. [He] did it so she would not write to some man in prison."

The State's evidence consisted of this correspondence from defendant to victim in addition to witness testimony concerning the correspondence. We have set forth in more detail the specifics of the evidence below in our discussion of whether the evidence was sufficient to sustain defendant's convictions. Defendant moved for an acquittal at the close of the State's case. The court overruled his motion. Defendant did not put on any evidence, and a jury subsequently convicted him as charged. After denying defendant's motion for a new trial, the court found him to be a prior and persistent offender and sentenced him to two ten-year terms of imprisonment on each count, to run concurrently to each other but consecutively with the sentence(s) he was already serving. This appeal follows.

**Standard of Review**

Upon review of defendant's challenge to the sufficiency of the evidence, we must determine if the State presented sufficient evidence from which a reasonable juror could have found defendant guilty beyond a reasonable doubt. *State v. Whalen,* 49 S.W.3d 181, 184 (Mo. banc), *cert. denied,* —— U.S. ——, 122 S.Ct. 567, 151 L.Ed.2d 440 (2001). This standard of review requires that we:

> "must look to the elements of the crime and consider each in turn.... [The Court is] required to take the evidence in the light most favorable to the State and to grant the State all reasonable inferences from the evidence. [The Court] disregard[s] contrary inferences, unless they are such a natural and logical extension of the evidence that a reasonable juror would be unable to disregard them. Taking the evidence in this light, [the Court] consider[s] whether a reasonable juror could find each of the elements beyond a reasonable doubt."

*Id.* (alterations in original) (quoting *State v. Grim,* 854 S.W.2d 403, 411 (Mo. banc), *cert. denied,* 510 U.S. 997, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993)). Despite our review in deference to the State's evidence, we cannot° " 'supply missing evidence, or give the [State] the benefit of unreasonable, speculative or forced inferences.' " *Id.* (quoting *Bauby v. Lake,* 995 S.W.2d 10, 13 n. 1 (Mo.App. E.D.1999)).

**Sufficiency of the Evidence: Substantial Step**

In reviewing defendant's claim that the evidence was insufficient to demonstrate an attempt to commit statutory rape in the second degree and an attempt to commit statutory sodomy in the second degree thus warranting submission to the jury, we first consider the statutes under which defendant was charged and convicted. Un-

der Section 566.034.1,[2] "[a] person commits the crime of statutory rape in the second degree if being twenty-one years of age or older, he has sexual intercourse with another person who is less than seventeen years of age." For purposes of this section, "sexual intercourse" is defined as, "any penetration, however slight, of the female sex organ by the male sex organ, whether or not an emission results." § 566.010(4). Under Section 566.064.1, "[a] person commits the crime of statutory sodomy in the second degree if being twenty-one years of age or older, he has deviate sexual intercourse with another person who is less than seventeen years of age." For purposes of this section, "deviate sexual intercourse" is defined as:

> any act involving the genitals of one person and the mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person.

§ 566.010(1). Because defendant was charged with the *attempt* of both of these offenses, we must also consider the attempt statute, Section 564.011, which states:

> A person is guilty of attempt to commit an offense when, with the purpose of committing the offense, he does any act which is a substantial step towards the commission of the offense. A "substantial step" is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense.

██ Thus, an attempt charge under § 564.011 has two elements: (1) the defendant's purpose to commit the underlying offense, and (2) the defendant's doing of an act which constitutes a substantial step toward the commission of that offense. *State v. Withrow*, 8 S.W.3d 75, 78 (Mo. banc 1999).[3] Defendant does not dispute the sufficiency of the evidence concerning the "purpose" element. Rather, he contends that the evidence was insufficient to support a finding that he took a substantial step toward the commission of the offenses. We must determine whether defendant's conduct constitutes a "substantial step" toward the commission of the offenses or, in terms of § 564.011, whether his conduct constitutes "any act which . . . is strongly corroborative of the firmness of [defendant's] purpose to complete the commission of [statutory rape in the second degree and statutory sodomy in the second degree]."

██ "What act or conduct will constitute a substantial step will depend on the facts of the particular case." *State v. Molasky*, 765 S.W.2d 597, 601 (Mo. banc 1989). The State alleges that defendant's sending of the letters and sexually explicit materials, coupled with his conversations with victim in which he made her promise to have sex with him, constitute an act which was a substantial step toward the attempted statutory rape and sodomy of victim. The evidence offered by the State at trial showed as follows:

In September of 1999, when victim was twelve years old, defendant sent her a letter that included lengthy sexually explicit jokes and told her when he was going to be released from prison. Over the next several months, he sent her more letters

---

**2.** Statutory references are to RSMo 1994.

**3.** For a more detailed discussion on attempt law in Missouri, see H. Morley Swingle, *Criminal Attempt Law in Missouri: Death of a Tale of Two Theories*, 56 J. Mo. Bar 144, 144–51 (2000).

with dozens of pictures of naked men and women engaging in vaginal, anal and oral sex. In December of 1999, defendant sent victim a letter that included a drawing of a man entering a woman vaginally from behind. Defendant wrote on this drawing, "I love you so much [victim]" with an arrow drawn toward the man in the picture. He also wrote "your d—k feel so good, Jerome" with an arrow drawn toward the woman in the picture. Additional correspondence from defendant to victim included promises that he would take her shopping and give her half of his paycheck, that they would meet at the hotel as she had promised when she left for "work" and she could be back at the time she was supposed to be back, that he would not buy her a Christmas present unless she answered his letter, that he had a present for her but would not give it to her until she answered his letter and told him "something that I want to hear," that victim's "p——y belongs to me" and that "the other woman who lives with you" told him "that me and you can do whatever we want to." The only other woman living with victim at the time was her mother.

Defendant also sent victim a document entitled "arrest warrant" from "The Court of Love." Defendant typed in at the top "Mr. Jerome K. Bates vs. [victim]." This "warrant" included language such as "anything you say or scream during sexual questioning will be used in your favor in a court of love," and:

> In the event of the loss of said document ... this court will be forced to plead this case of total unrestrained desire and satisfaction, which will result in further more obscene action against your sweet and sexy body which may include: licking and kissing you until you pass out. I am going to blow your mind in every sexual way imaginable for years to come.

Defendant also sent victim diagrams of various sexual positions, with handwritten notes on them such as "you always did like getting on top of me" with a smiley face, "just let me know the 'ways' you want me to make love to you," and "do you think you can hold your leg up like this for me," referencing a particular sexual position. Defendant sent instructions to victim concerning how she was to sneak out of her house as if she were going to school and instead secretly rendezvous with him at a hotel when he was released from prison. He instructed her on how she should lick her finger and put it in her vagina to prepare to have sex with him so it would not be "to [sic] sore," what the anal sex portrayed in the pictures entailed, and the necessity that victim go on birth control when he was released from prison. One color photo of a penis being inserted into a vagina included a note from defendant to victim saying, "that's how this d—k going to be in you; don't forget we got to take some pictures of your pretty p——y." One drawing of a man with a mouth on a woman's vagina included instructions to victim to cut her hair from "around that area" so it would not get in defendant's mouth. Another drawing of the same act said that in two more months victim could "get all this d—k." Another drawing of a man entering a woman from behind had an arrow to the man with the word "me" and an arrow to the woman with the word "you."

Defendant also sent victim pamphlets intended to educate teenagers on sex. He wrote instructions to her on the pamphlets such as "I want go on soft" next to instructions on how to put on a condom and "me and you" next to the words "have sex only with each other." In his correspondence with victim, defendant also ordered victim not to have sex with anyone else because he wanted to be her first and threatened

to punish her if she did. Defendant repeatedly reminded victim that she had sworn an oath to God to have sex with him, and she had to keep that promise. He told her that he would buy a douche and "rubbers" and that eventually he wanted her to have a baby by him.

In March of 2000, defendant wrote another letter to victim saying that he was disappointed in her, telling her that she "owed" him and that "we got a lot to do when I come back"—referring to pornographic pictures he had sent her of naked men and women engaging in various sexual acts. In reference to one of the enclosed pictures he wrote, "this will be us getting down and I know your a—hole is going to blow my mind. Let me tell you something, when you and me make a promise, we do not break that promise."

 We find that this correspondence from defendant to victim does not legally constitute a substantial step toward statutory rape and statutory sodomy. While it is obvious that through these communications defendant expressed a *desire* to become sexually active with a young girl, he took no further action beyond this expression. The mere sending of the sexually explicit material and letters to victim, though an abhorrent act, is not sufficient to establish attempt liability for statutory rape and sodomy. This evidence of his desire was not "accompanied by any other corroborative action." *Molasky*, 765 S.W.2d at 602. Indeed, as the State points out, the law of substantial step attempt does not focus on what has yet to be done, but instead focuses on what a defendant has already done. *Id.* at 600. Nonetheless, as *Molasky* instructs, "Missouri cases indicate a substantial step is evidenced by actions, indicative of purpose, not mere conversation standing alone." *Id.* at 602 (footnote omitted).

In *Molasky*, the defendant, while in prison, had several conversations with two other inmates to arrange the killing of persons who were in the process of adopting defendant's son. *Id.* at 599. With them out of the way, defendant felt that his father could gain custody instead. *Id.* at 602. One of the inmates wore a hidden microphone to tape his conversation with defendant. *Id.* at 599. During one of the taped conversations, a price for the killing was set at $5,000, a time when the killings could be done was discussed, and defendant emphasized that he wanted the bodies disposed of and that his son should not witness the murders. *Id.* Defendant never produced an address or place of employment or photo of the intended victims. *Id.* at 602. Another inmate testified that he was solicited by defendant to perform the murders. *Id.* at 599. A price was established, a shotgun was to be used and nothing was to occur in front of defendant's son. *Id.* When the inmate demanded payment before the murders, defendant instructed him to call his father, say he was "Mr. Wonderful" and that he would receive $2,000. *Id.* Neither inmate took any action to follow through with the murders. *Id.*

While making it clear it was not suggesting solicitation could never be a substantial step to support an attempt charge, the Supreme Court found that this solicitation was mere conversation not accompanied by any other corroborative action. *Id.* at 602. The Court specifically mentioned as examples the fact that no concrete arrangements were made for payment, no money changed hands and no identification or photo of the alleged victim was given. *Id.* There was mere conversation unaccompanied by actions indicative of purpose. *Id.*

The State attempts to analogize defendant's actions to those of defendant Bolen in *State v. Bolen*, 731 S.W.2d 453 (Mo.App.

E.D.1987). Bolen was charged with sodomy and attempted sodomy for Bolen's simultaneous acts of masturbating his young victim and proposing oral sodomy in exchange for a concert ticket, a payment of five dollars and a payment of ten dollars "to secure permission." *Bolen,* 731 S.W.2d at 457. Bolen argued that no separate "substantial step" toward the commission of the attempt sodomy occurred. *Id.* at 458. The Eastern District found that "the successive offers of consideration [were] a substantial step because they [were] 'strongly corroborative of the firmness of [Bolen's] purpose to complete the commission of the offense.' [Section 564.011] does not require that an actual or specific attempt be made to perform each and every element of the crime." *Id.* (*quoting* § 564.011 RSMo Cum.Supp.1984). As we previously mentioned, "[w]hat act or conduct will constitute a substantial step will depend on the facts of the particular case." *Molasky,* 765 S.W.2d at 601. *Bolen* is factually distinguishable from the case now before us. The consideration offered to the victim in *Bolen* is not present in this case. The State claims that defendant's promises to give victim money and presents or to withhold presents or support constitute consideration. However, upon a close review of the evidence, we fail to see that any of defendant's "promises" were made in exchange for victim having sex with him. If anything, defendant made these promises only in return for victim writing him back while he was in prison.

We also consulted other jurisdictions' treatment of the sufficiency of evidence to show a substantial step toward the commission of statutory rape and sodomy. While it may be fortunate that there is not an abundance of case law on the subject, the cases we did find all were factually distinguishable in that the other defendants' actions were more readily ascertained to be a "substantial step" toward

attempted statutory rape or sodomy. For example, in *State v. Fowler,* 3 S.W.3d 910 (Tenn.1999), the Supreme Court of Tennessee found that the evidence therein supported the jury's finding that Fowler's conduct constituted a substantial step toward the commission of statutory rape. Fowler, who was seeking homosexual activity on the night of his arrest, stopped at a rest area that had a reputation for homosexual activity. While there, Fowler approached an undercover police officer and agreed to pay him for "delivery of a young male" for the "purpose of procuring a young male [for] sex." *Fowler,* 3 S.W.3d at 912. He then wrote the officer a check for $200 "with the expectation that the boy would be turned over to [Fowler]." *Id.* In finding that the evidence "overwhelmingly supports the jury's finding that [Fowler's] conduct constituted a substantial step toward the commission of statutory rape," the court stated:

> Requiring conduct beyond the defendant's conduct in this case would be inconsistent with both the general goal of crime prevention and [its] analysis in *Reeves* [, in which the court abandoned the "mere preparation" test or the requirement of an "overt act" in attempt law—which requirement has also been abandoned in Missouri]. We would create a dangerous precedent by requiring that the defendant take delivery of the boy or actually begin some act that would approach sexual penetration. Once a pedophile purchases a child and takes the child into his possession, some damage has likely occurred. Moreover the child is placed in a position of imminent danger from which the child may be powerless to protect himself or herself.

*Id.* at 912–13. Fowler not only showed his intent to statutorily rape a young boy, but he took the additional substantial step of

writing a check for $200 to the officer in order to effectuate his intent. In our case, defendant only wrote victim the letters and sent pictures from prison. There was no further "substantial step."

The State suggests that if we find that defendant's actions in this case do not constitute a substantial step, we will be creating the "dangerous precedent" that the Tennessee Supreme Court expressly sought to avoid in *Fowler*. We disagree. By holding that the evidence is insufficient herein, we certainly do not suggest that in order to charge defendant as they did the State had to wait for him to actually "begin some act that would approach sexual penetration" of victim. We certainly do not condone defendant's conduct, nor do we intend to suggest what conduct is required to support a charge of attempted statutory rape and sodomy. We merely hold that, on the facts of this case, the State's evidence is insufficient as a matter of law to support the jury's finding of guilt on the charged crimes in that the communications from defendant to victim do not constitute a "substantial step" toward the commission of attempted statutory rape and attempted statutory sodomy.

The State urges that more than "mere conversation" existed in this case. We disagree. The letters are conversations, and, as irresponsible and deplorable as the things defendant wrote to victim may be, the conversations simply are not sufficient to support defendant's convictions. Indeed, defendant's conduct in writing those letters to victim constitutes a crime, but it does not constitute the charged crimes of attempted statutory rape and sodomy in the second degree under Sections 564.011, 566.034 and 566.064. Following the holding of our Supreme Court in *Molasky,* we find there was no substantial step toward the commission of the crimes charged. 765 S.W.2d at 602.

Defendant's point on appeal is granted.

### Conclusion

The evidence is insufficient to demonstrate that defendant took a substantial step toward the commission of statutory rape in the second degree or statutory sodomy in the second degree. Therefore, the trial court erred in submitting the case to the jury and overruling defendant's motion for judgment of acquittal. *Withrow,* 8 S.W.3d at 81. The judgment entered upon defendant's convictions is reversed, and the cause is remanded with instructions to discharge defendant. *Id.*

EDWIN H. SMITH, P.J., and HOLLIGER, J., concur.