

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| **STATE OF MISSOURI,** | ) | |
| | ) | |
| **Respondent,** | ) | **WD79096** |
| | ) | |
| **v.** | ) | **OPINION FILED:** |
| | ) | **November 22, 2016** |
| **JERRY LEE RICE,** | ) | |
| | ) | |
| **Appellant.** | ) | |

**Appeal from the Circuit Court of Buchanan County, Missouri**
The Honorable Randall R. Jackson, Judge

Before Division Four: Mark D. Pfeiffer, Chief Judge, Presiding, Karen King Mitchell, Judge and Gary D. Witt, Judge

Jerry L. Rice ("Rice") appeals from his conviction, following a trial by jury before the Circuit Court of Buchanan County, of one count of attempted enticement of a child, section 566.151,[1] for which he was sentenced as a prior offender to twenty-five years' imprisonment.[2] Rice raises two points on appeal. First, Rice argues the trial court erred in denying his motion for judgment of acquittal and sentencing him for attempted

---

[1] All statutory references are to the Revised Statutes of Missouri 2000 as currently supplemented, unless otherwise indicated.

[2] Rice was also charged with furnishing pornographic material to a minor, a violation of section 573.040. The jury convicted Rice of that charged but the conviction was subsequently overturned by the trial court based upon the unconstitutionality of a portion of the statute forming the basis for that charge. Neither party raises any arguments on appeal regarding this decision.

enticement of a child because the State's evidence failed to establish beyond a reasonable doubt that Rice made a substantial step toward the commission of the offense. Second, Rice argues that the trial court abused its discretion in refusing to allow testimony from his expert witness regarding potential factors that could bias child witnesses in forensic interviews. We affirm.

## Factual Background[3]

In 2013 and 2014, Rice was in a romantic relationship with a woman who was the mother (the "Mother") of an eleven-year-old girl (the "Victim").[4] Rice, for a time, resided in the home of Mother and Victim in St. Joseph, Missouri. Normally, Rice was never left alone with Victim, but Mother had a doctor's appointment in February of 2014 and did not arrive home before the Victim returned from school.

While Mother was gone, the Victim was reading a book in her living room about sex and anatomy which her mother had given her for educational purposes. Rice saw the book and gave victim a couple of CDs[5] which Rice said would teach her about what was in the book and asked the Victim to watch them. On the CD's were movies of naked people touching themselves and each other and included sexual intercourse. Rice came into the Victim's room while she was changing clothes and then left. He returned while the Victim was watching the movies Rice had given her. On the screen was a woman placing her

---

[3] On appeal from a jury-tried case, we view the facts in the light most favorable to the jury's verdict. *State v. Peal*, 393 S.W.3d 621, 623 n.1 (Mo. App. W.D. 2013).

[4] In order to comply with section 566.226, the names of the Victim and her Mother will not be used.

[5] The Victim testified at trial that Rice gave her CDs to watch. From the record, it is unclear whether these were DVDs or CDs that could be played on a computer. The distinction, however, is inconsequential as it has no bearing on the legal issues in this case.

2

fingers in her vagina. Rice retrieved a drumstick off the dresser, said that it "would be perfect," and asked her if she "wanted to know what it felt like" as he pointed to the screen. The Victim responded, "No." Rice told the Victim to lie down. The Victim refused, and Rice left and then returned for a third time. Upon his return, Rice put his arm around the Victim's neck and attempted to kiss her on the lips. The Victim resisted.

Upon returning home, the Victim told Mother that Rice had shown her dirty movies. The Victim said that people were having sex in the movies. When questioned by Mother, Rice responded that he "showed her some movies, so what." The following day, the Victim reported the incident with the drumstick to her Mother. Mother did not file a police report until a month after this incident because she did not know his conduct was illegal. Mother also never filed a police report regarding an alleged previous incident in which the Victim claimed Rice put his hand down her pants and touched her vagina over her underwear.

The Victim was interviewed by Detective Dustin Robinson ("Detective Robinson") who is employed in the Family Crimes Division. Detective Robinson is trained as a forensic interviewer to work with children. A recording of the interview was made when the Victim was interviewed at the Child Advocacy Center ("CAC") by Detective Robinson, and the recording was played for the jury. At the time of the incident, the Victim was eleven years of age. At the time of the CAC interview, the Victim was twelve years of age.

Rice sought to introduce expert testimony from Dr. Matthew Fanetti ("Dr. Fanetti"), a professor of psychology and coordinator of the forensic child psychology certification at Missouri State University. Rice sought to introduce evidence from Dr. Fanetti regarding his research into and development of a protocol for use in the evaluation of forensic child

3

interviews.  The protocol he developed, the Protocol for Evaluating Forensic Interviews of Children ("PEFIC"), identifies seventeen biasing factors that could impact a child forensic interview and results in an interview score.  Rice sought to elicit testimony from Dr. Fanetti regarding each of the seventeen potential biasing factors and the score he calculated for the interview of the Victim by Detective Robinson.

At a pretrial hearing on the admissibility of this evidence, the State argued the admission of this evidence would invade the province of the jury.  The trial court did not allow the testimony regarding each of the biasing factors and the score developed by Dr. Fanetti for this particular interview.  But, the trial court did rule that it would allow testimony from the expert regarding general biases affecting a child's testimony and generally issues with regard to a child's memory and testimony, provided there was a foundation laid that the testimony was applicable to the facts of this case and restricted such that there would be no comment on this child victim's credibility.  At trial, Rice did not call Dr. Fanetti to testify in light of the trial court's previous ruling on the limited admissibility of the proposed testimony.

**Analysis**

**Point One**

In Point One on appeal, Rice argues that the trial court erred in overruling his motion for judgment of acquittal and in sentencing Rice for attempted enticement of a child because the State's evidence failed to establish beyond a reasonable doubt that showing the Victim a pornographic film and asking her if she wanted to know what it felt like was a

substantial step toward persuading, soliciting, coaxing, enticing, or luring her for the purpose of engaging in sexual conduct with him.

"When an appellant challenges the sufficiency of the evidence to support his convictions, we review that evidence in the light most favorable to the verdict, giving the State the benefit of all reasonable inferences." *State v. Blair*, 443 S.W.3d 677, 682 (Mo. App. W.D. 2014). "We do not reweigh the evidence, but determine only whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *Id*.

Section 566.151.1 provides that

[a] person at least twenty-one years of age or older commits the crime of enticement of a child if that person persuades, solicits, coaxes, entices, or lures whether by words, actions or through communication via the Internet or any electronic communication, any person who is less than fifteen years of age for the purpose of engaging in sexual conduct.

The enticement statute is also subject to the general attempt statute. *State v. Craig*, 2016 WL 2731575 at *3 (Mo. App. W.D. May 10, 2016) (citing *State v. Faruqi*, 344 S.W.3d 193, 202 (Mo. banc 2011)). The general attempt statute provides that

[a] person is guilty of attempt to commit an offense when, with the purpose of committing the offense, he does any act which is a substantial step towards the commission of the offense. A "substantial step" is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense.

Section 564.011. "Thus, for attempted enticement of a child, a fact-finder need only 'find that defendant took a substantial step to persuade, solicit, coax, entice, or lure any person who is less than 15 years old for the purpose of engaging in sexual conduct.'" *Craig*, 2016 WL 2731575 at *3 (quoting *State v. Davies*, 330 S.W.3d 775, 787 (Mo. App. W.D. 2010)).

5

The State need not show that Rice took a "substantial step" to actually engage in sexual conduct, but only that he took a "substantial step" toward persuading, soliciting, coaxing, enticing, or luring a child for the purpose of engaging in sexual conduct with her. *Id*.; *see also State v. Fleis*, 319 S.W.3d 504, 509 (Mo. App. E.D. 2010). "The only requirement for attempting to entice a child is that 'defendant's purpose was to commit the underlying offense and that defendant took a substantial step toward its commission.'" *Fleis*, 319 S.W.3d at 509 (quoting *State v. Wadsworth*, 203 S.W.3d 825, 832–33 (Mo. App. S.D. 2006)). "What act will constitute a substantial step depends on the facts of the particular case." *Davies*, 330 S.W.3d at 791 (quoting *State v. Young*, 139 S.W.3d 194, 196 (Mo. App. W.D. 2004)).

On appeal, Rice argues there was "insufficient evidence" to support that he took a substantial step toward persuading, coaxing, enticing or luring the Victim for the purpose of engaging in sexual contact. The Felony Information charged that Rice was guilty of the attempted enticement of a child in that the substantial step toward the commission of that crime was that Rice "show[ed] [ the Victim] a pornographic film and ask[ed] her if she wanted to know what it felt like [ . . . . ]" Rice, in argument, does not claim there was insufficient evidence that Rice did show the Victim a pornographic film and did ask her whether she wanted to know what it felt like, in reference to the pornographic film. Rather, Rice argues that those actions as a matter of law do not constitute a "substantial step" to support his conviction.

Rice analogizes this case to *State v. Bates*, 70 S.W.3d 532 (Mo. App. W.D. 2002), in which this Court found the defendant's actions in that case did not constitute a substantial

6

step to support the defendant's convictions for attempted statutory rape and attempted statutory sodomy in the second degree. In *Bates*, the defendant was imprisoned and sent sexually explicit letters to a minor in which he expressed his desire to be sexually active with her. *Id*. at 536-37. As he was imprisoned throughout the entire relationship, the defendant was only able to write letters to express this desire. The Court found that this was insufficient to constitute a "substantial step" because "Missouri cases indicate a substantial step is evidenced by actions, indicative of purpose, not mere conversation standing alone." *Id*. at 537 (quoting *State v. Molasky*, 765 S.W.2d 597, 602 (Mo. banc 1989)).

As is readily apparent, *Bates* is easily distinguished from the facts of this case. In this case, we have two charged actions - the showing of a pornographic film to a minor and a direct solicitation to the Victim asking her whether she wanted to know what the actions occurring in the pornographic film felt like.[6] Here, we have *action* from Rice indicative of his purpose to entice or lure the Victim into sexual conduct. This is not *mere* conversation and under the facts of this case these actions are sufficiently corroborative of Rice's intent to lure, entice, or coax into engaging in sexual conduct and is supported by the evidence.

Point One is denied.

## Point Two

In Point Two on appeal, Rice argues that the trial court abused its discretion in sustaining the State's objection to proposed testimony from Rice's expert witness regarding

---

[6] He also picked up a drumstick indicating it would be "perfect" and attempted to kiss the victim, further indications of his intent to commit the underlying offense.

7

potential factors that could bias a child in a forensic interview. Rice contends that Dr. Fanetti's testimony would not have invaded the province of the jury as a comment on the Victim's credibility but rather would have assisted the jury in evaluating the interview process for biased processes.

"Trial courts have broad discretion in determining the admissibility of evidence. When this Court is asked to review the admissibility of evidence, it reviews for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." *State v. Churchill*, 98 S.W.3d 536, 538 (Mo. banc 2003) (internal quotations and footnotes omitted).[7]

It is axiomatic that in order

> [t]o be admissible, evidence must be both logically and legally relevant. *State v. Barriner*, 111 S.W.3d 396, 400 (Mo. banc 2003). Logically relevant evidence is evidence which "'tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence, or ... tends to corroborate evidence which itself is relevant and bears on the principal issue of the case.'" *Id*. at 400–01 (quoting *State v. Tisius*, 92 S.W.3d 751, 760 (Mo. banc 2002)). Evidence is legally relevant if its probative value outweighs the dangers of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness. *Id*. at 401.

*State v. Ross*, 292 S.W.3d 521, 527-28 (Mo. App. W.D. 2009).

The determination of whether expert opinion testimony in child sexual abuse cases should be admissible has been particularly problematic. In such cases,

> two types of expert testimony are typically challenged: (1) "profile" testimony which describes behaviors and other characteristics commonly

---

[7] Though Dr. Fanetti was not called at trial and no offer of proof was made at trial, his full testimony was presented to the trial court in the pretrial hearing on the admissibility of his testimony. The State does not allege that this issue is not properly preserved for appeal. We will proceed in our analysis under the assumption that the claim of error was properly preserved.

8

observed in sexual abuse victims; and (2) particularized testimony concerning the alleged victim's credibility. *State v. Williams*, 858 S.W.2d 796, 798–799 (Mo. App. E.D. 1993). Although the trial court has great discretion in admitting the former, the latter usurps the province of the jury and, therefore, is inadmissible. *Id*. In other words, an expert will not be allowed to proffer opinion testimony concerning a particular witness' credibility. *Id*.

*State v. Biezer*, 947 S.W.2d 540, 541 (Mo. App. E.D. 1997).

The testimony sought to be admitted by Rice was expert testimony regarding seventeen potential biasing factors as developed by the expert that would allegedly help the jury make its own determination regarding the biasing factors present during the Victim's interview and, therefore, assist the jury in making a credibility determination. Dr. Fanetti admitted in the pretrial hearing on the admissibility of his evidence that PEFIC is "nothing more than a mechanism for us to help the deciders of truth understand the context in which that testimony or that reported recall was produced." The factors and the score produced do not predict the accuracy of the Victim's statements but instead analyze the context in which it was produced. Dr. Fanetti testified that even if a biasing factor was found in an interview, it would not mean a child was influenced by it.

The trial court did not abuse its discretion in sustaining the State's objection to Dr. Fanetti's proposed testimony. The ultimate issue upon which Dr. Fanetti's testimony would have had any relevance is the credibility of the Victim. The issue to ultimately be decided by the jury was whether the Victim was credible. Rice sought to introduce Dr. Fanetti's testimony to undermine the jury's confidence in her veracity. The trial court ruled that Rice failed to show that his proposed expert testimony was probative of the determination of any issue that the jury was called to decide upon in the case. Rice sought to admit evidence

9

of potential biasing factors for which there was no evidence that they were present in the case and, therefore, relevant. The admission of such testimony, according to the trial court, would obfuscate the issues and confuse the jury. The trial court did rule, however, that Rice could offer opinions from his expert regarding potential biasing factors affecting the Victim's testimony "provided that those opinions are applicable to the facts of this case and provided they do not attempt to comment on this child's credibility."

As explained in *Biezer*,

[a]n expert's testimony regarding improper interviewing techniques in a child sex abuse case runs the real risk of commenting on the victim's credibility, which is clearly impermissible under Missouri law. Additionally, such testimony injects a collateral issue into the case and may confuse and muddle the mission of the jury. [ . . . ] We restate that it is within the trial court's discretion to allow or exclude expert testimony. The purpose of expert testimony is to provide information that will assist the jury in an area in which they have no expertise. In addition, expert testimony must be relevant to the case at hand.

947 S.W.2d at 542-43 (internal citation omitted).

Here, the trial court did not abuse its discretion in refusing to admit testimony on biasing factors for which there was no evidence in the case. Such testimony would not have had any logical relevance to any issue to be decided by the jury and its legal relevance is also questionable as it would only have served to obfuscate and confuse the jury. Rice did not call on his expert at trial and did not attempt to show that any of the seventeen biasing factors were present in the Victim's interview. According to the trial court's ruling, the court would have allowed Dr. Fanetti to provide testimony on biasing factors if there were evidence that such a bias was actually present in this case. We find that the trial court did not abuse its discretion in so ruling.

10

Point Two is denied.

## Conclusion

The judgment of the circuit court is affirmed.

_____
Gary D. Witt, Judge

All concur

11