

# Missouri Court of Appeals
## Southern District

### In Division

STATE OF MISSOURI, )
)
    Plaintiff-Respondent, )
)
vs. ) No. SD37542
)
ROBERT JAMES COOPER, ) **Filed: May 30, 2023**
)
    Defendant-Appellant. )

APPEAL FROM THE CIRCUIT COURT OF STODDARD COUNTY

The Honorable Joe Z. Satterfield, Judge

**<u>AFFIRMED</u>**

Robert James Cooper appeals the judgment of the Circuit Court of Stoddard County convicting him, after a jury found him guilty, of one count of attempted enticement of a child to engage in sexual conduct and sentencing him to 20 years' imprisonment. In this appeal, Mr. Cooper raises one point relied on contending the trial court erred in overruling his motions for judgment of acquittal challenging the sufficiency of evidence supporting the jury's finding of guilt. This Court finds sufficient evidence supported a reasonable jury finding that Mr. Cooper committed attempted enticement of a child. We affirm the trial court's judgment.

1

**Factual Background and Procedural History**

Informant created a fake Facebook profile under a different name posing as a 13-year-old girl to "hunt[] predators online."  Informant testified she would never "add anybody first" but, instead, explained she was 13 years old within the first couple of messages after men messaged her first.  The profile had no real information about her, but she used her actual pictures on it because she looked extremely young.  On September 26, 2020, Mr. Cooper, a 40-year-old man, messaged Informant.  The following exchange occurred:

> Mr. Cooper:  Hi.
> Informant:  Hi.
> Mr. Cooper:  How old are you?
> Informant:  13.
>
>          . . . .
>
> Mr. Cooper:  [D]o you want to – you want to be a 13 year old slave?
> Informant:  What do you mean by that?
> Mr. Cooper:  There are my friend 13 year old slave wants 12.
> Informant:  Okay.  What do they do?
> Mr. Cooper:  I am more time up have sex with you baby tattoos your old
>          by and get them pregnant.[1]

As the message exchange continued, Mr. Cooper informed Informant that he was from Dexter.  He then asked her how old she was again, and she responded, "13." Informant inquired, "What do you want me to do?  Do you want me to come to Dexter?" He replied, "Yeah.  So I could start the s-h-i-t out of you."  The conversation continued:

> Informant:  Start me?

---

[1] The quoted Facebook messages throughout this opinion have numerous syntax and grammatical errors.  We recite them as provided in the evidentiary record, unless otherwise indicated, to retain their original language in lieu of noting each error.  Screenshots of the Facebook Messenger conversations were admitted at trial as Exhibit 1 and Informant was asked to read them during her testimony.  For ease of understanding, we present the messages as read by Informant at trial.

Mr. Cooper:  When I get done with you you love me Daddy maybe pregnant. So you want me to make you a slave?
Informant:  I don't know. Tell me what I would have to do.
Mr. Cooper:  Yes, I know I try -- I'm tired.
Informant:  Okay. Go to sleep.
Mr. Cooper:  So are you going to have fun being a slave?
Informant:  What does a slave do?
Mr. Cooper:  I bet you never had sex before a 12.
Informant:  No, I haven't.
Mr. Cooper:  Just wait I get that money I'm getting all that all slaves down here.
Informant:  Down where?
Mr. Cooper:  Dexter.

Mr. Cooper then tried to get Informant to come to Dexter and talked about her parents, saying, "No, no, y'all going back to your family's house when I'm marching and Mark you of you are mine." Informant tried to portray a scared 13-year-old girl and responded with, "Okay. That's scary." He told her he would make her call him "master" and talked about restraining her with handcuffs, ropes, and "things like that." He informed her that she was going to have sex with his other slaves and then have sex with him. She responded:

Informant:  No, I'm not, and I don't know what S is.
Mr. Cooper:  Well, I'm going to stick my dick in your ass and your P in your mouth and have these orgies eat you out and you better say yes master.
Informant:  Or what?
Mr. Cooper:  And you will be locked up and you will be punished.

The conversation continued with other threats of sexual acts, including "bondage type stuff" and repeated talk about getting Informant pregnant. Mr. Cooper again asked her how old she was and she responded, "13. You already asked me." After some more exchanges, he said, "Do you want to ask your friends when they're coming down," inviting her to bring other girls with her. He talked about making her wear a chastity belt when she leaves him and asked, "So you really want to come down now and be with your

3

friends and you know we're going to have sex[?]" She answered, "Sure, I want to be with my friends. I've never had sex."

The conversation then turned to how she was going to get to Dexter:

Mr. Cooper: How are – how y'all going to get down here?
Informant: Where [sic] are you moving? How would I be your slave if you move? I have a friend who could drive me tomorrow. I don't know about the other girls. They have school but I don't.
Mr. Cooper: Oh, I won't still be down here before I move so I can have fun with all y'all.
Informant: So I'm not coming to Dexter?
Mr. Cooper: Why are you ain't – why are you ain't coming to Dexter?

Mr. Cooper asked Informant to say she was 13 years old, "I'm your slave," and "I'm ready to be punished by you." She responded that she was not comfortable saying that until she had met him. He continued to tell her that she will become pregnant and she is going to be "tied up and gagged." He stated, "I want to tie you up and gag you . . . [b]ecause I do got ropes, handcuffs, ball gags and caller [sic]." He also told her that he wanted her to act like a horse.

Mr. Cooper then began discussing where to meet. "Where are you know I have to find a place to do all this stuff to you so you can wait. Do you want to see a picture of my cock? . . . And my phone's 'money' so I will talk to you tomorrow so you going to wait till I find a place to do this." He explained he was going to make a sex video where she is tied up.

After additional conversation, Informant asked him to send her his address. He instructed her to come to "Dexter Inn to come see me. . . . I stay with a friend but I can still meet you somewhere. But I can meet you at Dexter Inn." Mr. Cooper continued:

You know we ain't going to be able to sleep at my friend's house cuz you are underage so we will have to find a house where you can stay. . . . Right

4

now he's just going to be me and you so make sure you buying some little bit of money for food and drinks. Cuz you will need it. So you going to promise me you won't cheat on your masters right now. I don't have no cash advance to put on you because I put it on my other slaves I have.

He then sent her a picture of himself and said, "This is your master." He asked her what time she would get out of school and when she would start "heading this way." She responded, "I'll let you know."

Informant contacted the Dexter Police Department after ending the conversation with Mr. Cooper. She conferred with Detective Cory Mills, gave him the log-in information to the Facebook account, and had no further involvement after she handed it over to Dexter Police. Detective Mills took over the account, still posing as the 13-year-old girl. Detective Mills eventually arranged a meeting with Mr. Cooper at the Dexter Inn.

On September 28, around 6:00 p.m., Detective Mills and Detective Thomas Forkum arrived at the Dexter Inn, and management allowed them to use a room for the arranged meeting. Mr. Cooper arrived at 6:49 p.m. after being dropped off by his friend at the hotel. He approached the room, knocked on the door, and the officers took him into custody. Mr. Cooper had brought two blankets and a suitcase with him. The suitcase contained four pornographic DVDs, three bundles of nylon rope, two gagging ball sex toys, a black blindfold, two pairs of handcuffs - one black and one silver, a silver choke collar with spikes that go into the neck as someone is being choked, a General Electric tape recorder, one pink sex harness with several cuffs that would restrain a person, two pairs of stained female panties, paper documents with Mr. Cooper's name on them, and one pair of black leg and hand restraints with a silver chain and two cuffs. When the detectives arrested Mr. Cooper, and without any questions from the detectives

5

about a female to respond to, he spontaneously yelled, "I didn't know she was 13." After being read his *Miranda*[2] rights Mr. Cooper did not wish to make a statement and no further questioning was done that evening.

On September 29, Detective Mills removed Mr. Cooper from his holding cell and again advised him of his *Miranda* rights. After waiving his rights, Mr. Cooper agreed to make a recorded statement. Mr. Cooper admitted he was the one sending the messages to Informant, who he believed was a 13-year-old girl, that the selfie picture he sent to Informant was a picture of him, and arrangements were made to meet at the Dexter Inn. Mr. Cooper also confirmed to Detective Mills he brought all of the items in the suitcase with him to the Dexter Inn. He admitted he was going to tie up who he believed to be a 13-year-old girl and take her to Florida.

The State charged Mr. Cooper with one count of attempted enticement of a child. His case was tried before a jury on March 14, 2022. Mr. Cooper moved for a judgment of acquittal at the close of the State's case and again at the close of all evidence. After 26 minutes of deliberation, the jury found Mr. Cooper guilty of attempted enticement of a child. The State and Mr. Cooper's counsel then presented additional arguments to the jury regarding Mr. Cooper's sentence because Mr. Cooper did not waive jury sentencing. Forty-nine minutes later, the jury recommended Mr. Cooper's punishment for enticement of a child be 20 years' imprisonment. The trial court subsequently denied Mr. Cooper's motion for new trial and sentenced Mr. Cooper to 20 years' imprisonment. This appeal followed.

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

6

## Discussion

*Point I: Evidence was Sufficient to Permit a Reasonable Juror to Find Beyond a Reasonable Doubt that Mr. Cooper Intended to Entice a Child to Engage in Sexual Conduct.*

Mr. Cooper's sole point on appeal claims the trial court erred in overruling his motions for judgment of acquittal because the State failed to produce sufficient evidence to prove that he maintained the requisite intent to persuade, solicit, encourage, or otherwise entice a child to engage in sexual conduct. We disagree and find the State produced sufficient evidence for the jury to find Mr. Cooper guilty of attempting to entice a child to engage in sexual conduct.

*Standard of Review*

Our analytical lenses for sufficiency-of-the-evidence claims are well defined:

> "When considering the sufficiency of the evidence on appeal, this Court must determine whether sufficient evidence permits a reasonable juror to find guilt beyond a reasonable doubt." *State v. Stewart*, 560 S.W.3d 531, 533 (Mo. banc 2018) (internal quotations omitted). "The evidence and all reasonable inferences therefrom are viewed in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the verdict." *Id.*

*State v. Hollowell*, 643 S.W.3d 329, 341 (Mo. banc 2022). This Court will affirm a trial court's denial of a motion for judgment of acquittal if, "at the close of evidence, there was sufficient evidence from which reasonable persons could have found the defendant guilty of the charged offense." *State v. Castoe*, 357 S.W.3d 305, 308 (Mo. App. S.D. 2012). We do not weigh the evidence but accept as true all evidence tending to prove guilt while granting reasonable inferences that support the verdict when determining whether evidence was sufficient to support a conviction and withstand a motion for judgment of acquittal. *State v. Naylor*, 510 S.W.3d 855, 858-59 (Mo. banc 2017). This

7

Court also "does not act as a 'super juror' with veto powers." ***Id.*** at 859 (quoting ***State v. Jones***, 479 S.W.3d 100, 105 (Mo. banc 2016)). We instead defer to the trier of fact's evaluations when reviewing the sufficiency of evidence supporting a criminal conviction. ***Id.***

*The Law at Issue*

> A person twenty-one years of age or older commits the offense of enticement of a child if he or she persuades, solicits, coaxes, entices, or lures whether by words, actions or through communication via the internet or any electronic communication, any person who is less than fifteen years of age for the purpose of engaging in sexual conduct.

Section 566.151.1.[3] A criminal defendant may be convicted of attempting to entice a child if the solicited "child" in question is someone masquerading as a minor and not under the age of 15. ***State v. Davies***, 330 S.W.3d 775, 787-88 (Mo. App. W.D. 2010). An attempt to commit enticement has the same penalty as actual enticement. Section 566.151.3.

One attempts to commit an offense when, with the purpose of committing the offense, he or she performs any act which is a substantial step towards commission of the offense. ***State v. Withrow***, 8 S.W.3d 75, 78 (Mo. banc 1999), *overruled in part on other grounds by* ***State v. Claycomb***, 470 S.W.3d 358, 361-62 (Mo. banc 2015). To prove a case of enticement of a minor, "[t]he only requirements were that defendant's purpose was to commit the underlying offense and that defendant took a substantial step toward its commission." ***State v. Wadsworth***, 203 S.W.3d 825, 832-33 (Mo. App. S.D. 2006). A "substantial step" is "conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense." Section 562.012. One

---

[3] All references to statutes are to RSMo Cum. Supp. 2022, unless otherwise indicated.

"act[s] purposefully" when the actor consciously engages in certain conduct to further an objective or desired result. *State v. Whalen*, 49 S.W.3d 181, 186 (Mo. banc 2001), *overruled in part on other grounds by Claycomb*, 470 S.W.3d at 362 n.5; Section 562.016.2.

*Analysis*

The evidence presented to the jury was sufficient to permit a reasonable juror to find Mr. Cooper guilty beyond a reasonable doubt of attempted enticement of a child. The evidence established Mr. Cooper's purpose was to lure who he believed to be a 13-year-old girl to the Dexter Inn where he intended to engage in sexual acts with her, and Mr. Cooper took a substantial step toward the commission of that purpose by going to the Dexter Inn to meet the girl to accomplish his intended conduct.

Mr. Cooper sent multiple Facebook messages to Informant, whom he believed from the very beginning of his conversations with her to be a 13-year-old girl after messaging her "Hi", asking her to be his slave and to call him master. The messages contained recurrent references to sadomasochism and asked her to perform sexual acts with him. Informant told Mr. Cooper again and again that she was a 13-year-old girl, but that never deterred him from his efforts to entice her into engaging in sexual conduct with him. Mr. Cooper arranged to meet Informant at the Dexter Inn, arrived at the hotel to meet her, and knocked on the door of the hotel room while carrying two blankets and a suitcase. The suitcase was full of numerous sex toys and related instruments, reflective of the items he referenced in his Facebook conversation and other items that would allow him to carry out the intended sexual acts he described to Informant during their previous conversations — four pornographic DVDs, three bundles of nylon rope, two gagging ball

9

sex toys, a black blindfold, two pairs of handcuffs - one black and one silver, a silver choke collar with spikes that go into the neck as someone is being choked, a General Electric tape recorder, one pink sex harness with several cuffs that would restrain a person, two pairs of stained female panties, paper documents with Mr. Cooper's name on them, and one pair of black leg and hand restraints with a silver chain and two cuffs.

Mr. Cooper displayed an awareness of the gravity of his behavior when he yelled upon being arrested, but before Detectives asked him any questions or referred to a young girl, "I didn't know she was 13." Mr. Cooper later admitted to the police detectives that he understood Informant to be a 13-year-old girl. He further admitted that he wanted to make Informant a sex slave, that he was the one sending the messages to Informant, that he believed she was a 13-year-old girl, that the selfie picture he sent to her was of him, and arrangements were made to meet her at the Dexter Inn. Mr. Cooper also admitted he brought the suitcase with him to the Dexter Inn and recounted its contents before Detective Mills examined the items. And, perhaps most concerning, Mr. Cooper admitted he was going to tie up who he believed to be a 13-year-old girl and take her to Florida.

Each instance reflects and exhibits Mr. Cooper's intent to take, and that he took, a substantial step toward accomplishing the crime of enticement of a child. *See, e.g., State v. Conner*, 583 S.W.3d 102, 111 (Mo. App. E.D. 2019) (substantial step of attempting to entice a minor found in expressing interest in sex in conversation and traveling to meet a minor at a predetermined location); *see also State v. Craig*, 498 S.W.3d 459, 464 (Mo. App. W.D. 2016) (substantial step found in sending several text messages to an undercover detective about meeting to have sex with a child and bringing sexual

paraphernalia to a hotel meeting with a supposed minor); *State v. Doubenmier*, 444 S.W.3d 921, 929 (Mo. App. S.D. 2014) (substantial step found in repeated sexual communications to the victim with references to a possible meeting). The jury was free to believe that Mr. Cooper acted purposefully at each stage with the intentional forethought necessary to meet Informant for sex.

Mr. Cooper does not challenge this sequence of events presented by the State at trial. He only argues these events and his acts fail to prove beyond a reasonable doubt that he maintained the required intent to commit a crime. He insists there was insufficient evidence that he attempted to entice a child because Informant initially proposed the rendezvous and encouraged Mr. Cooper to meet her. The evidence does not support Mr. Cooper's position. In addition to not supplying any legal authority stating that a child's actions negate the substantial step element of attempted enticement, an entrapment defense requires that the accused be unwilling to engage in the criminal conduct at issue. *Conner*, 583 S.W.3d at 112. The State's evidence established Mr. Cooper was willing and eager to engage in sexual acts with a 13-year-old child. In fact, it is well established that a criminal defendant need only believe the victim is under the age of 15 to be guilty of attempted enticement. *Davies*, 330 S.W.3d at 787-88. Here, the evidence is uncontested that Mr. Cooper believed Informant was a 13-year-old girl and described the sexual conduct he intended to engage in with her. He took several steps necessary to organize a meeting with her for sex, traveled to an agreed-upon hotel with a suitcase full of sexual items, and prepared for unlawful deviant acts with the child. It does not matter that Informant effectively set up a sting operation by posing as a target. *See Craig*, 498 S.W.3d at 464-67 (affirming conviction for attempted enticement of a

11

child after a police officer posted an online advertisement seeking people to have sex with a fictional child).

Mr. Cooper argues, because there is a distinction between attempted enticement and an attempt to complete a further sexual offense, we should focus on the exchange of messages between Informant and himself as opposed to the suitcase full of sex toys. He then maintains the messages alone are insufficient to find him guilty of attempted enticement just as correspondence was insufficient to convict a defendant in *State v. Bates*, 70 S.W.3d 532 (Mo. App. W.D. 2002). *Bates* held a jailed inmate had not taken a substantial step towards committing a crime when he sent sexually explicit letters to an underaged victim, which expressed a desire to have sex with said victim. *Id.* at 537-39. Mr. Cooper argues by analogy that his messages to Informant similarly did not satisfy the substantial step element of attempted enticement. This analogy fails. Unlike Mr. Cooper, the prisoner in *Bates* took no other corroborative action that indicated his intention to actually accost the victim. *Id.* at 537. Here, Mr. Cooper messaged Informant and asked her to perform deviant sexual acts with him, agreed on a meeting location to conduct the sexual acts, arrived at the hotel, and knocked on the hotel room door carrying a suitcase full of sexual paraphernalia to accomplish his intended purpose. We additionally question the applicability of *Bates* to this case given that *Bates* did not address an attempted enticement of a child crime. Rather, it concerned attempted statutory rape and attempted statutory sodomy. *Id.* at 537.

Subsequent judicial review of *Bates* supports our supposition. The Western District of this Court determined 14 years after its earlier decision that *Bates* did not apply to a case of attempted enticement of a minor. *State v. Rice*, 504 S.W.3d 198, 202-

12

03 (Mo. App. W.D. 2016).  This Court likewise did not extend **Bates** to another sodomy case where the underlying facts differed.  **State v. Bonich**, 289 S.W.3d 767, 772 n.8 (Mo. App. S.D. 2009).  We again conclude that **Bates** does not apply in a dissimilar situation and find that it does not support Mr. Cooper's arguments.

This Court's review of the evidence supporting Mr. Cooper's conviction demonstrates there was sufficient evidence for a reasonable juror to find Mr. Cooper satisfied all elements of attempted enticement of a child and to find him guilty of the crime.  Mr. Cooper undertook multiple steps of planning and preparation with his intended purpose being to having sex with a 13-year-old child.  Mr. Cooper believed Informant was less than 15 years of age and acted on that belief.  The trial court did not err by denying Mr. Cooper's motions for judgment of acquittal.

Mr. Cooper's point is denied, and the trial court's judgment is affirmed.


JENNIFER R. GROWCOCK, J. – OPINION AUTHOR

BECKY J.W. BORTHWICK, J. – CONCURS

GINGER K. GOOCH, J. – CONCURS