2017 ND 283

**STATE of North Dakota, Plaintiff and Appellee**

**v.**

**Michael Allen TRUELOVE, Defendant and Appellant**

No. 20170043

Supreme Court of North Dakota.

Filed 12/7/2017

Tristan J. Van de Streek (argued) and Leah J. Viste (on brief), Assistant State's Attorneys, Fargo, North Dakota, for plaintiff and appellee.

Anna Dearth (argued), third-year law student, under the Rule on Limited Practice of Law by Law Students, and Samuel A. Gereszek (appeared), East Grand Forks, Minnesota, for defendant and appellant.

Tufte, Justice.

[¶ 1] Michael Truelove appeals from a criminal judgment entered after a jury found him guilty of gross sexual imposition ("GSI"), terrorizing, interfering with a telephone during an emergency call, and aggravated assault. Truelove contests only the GSI conviction. We affirm, concluding there is sufficient evidence in the record to support the GSI conviction.

I

[¶ 2] Truelove met HFP at Dempsey's, a bar in downtown Fargo. HFP was working as a cocktail server, and Truelove was a patron that night (although he was also employed by Dempsey's as a custodian). They had not interacted prior to that night. HFP wrote her phone number on Truelove's pizza box. Truelove left, but after they exchanged a few text messages, he decided to come back to Dempsey's to meet her. HFP's shift ended, and the two of them consumed alcohol at Dempsey's.

[¶ 3] Toward the end of the night, HFP offered Truelove a ride home. The two of them walked to HFP's car, kissed, and drove to Truelove's apartment in South Fargo. HFP accompanied Truelove into his studio apartment. Once in the apartment, Truelove went into the bathroom, and HFP went to lie down on the mattress. After this point, the testimony of HFP and Truelove differed.

[¶ 4] HFP testified a naked Truelove came out of the bathroom and was in "attack mode"; Truelove got on top of her; she told him to get off her and that she wanted to go to bed; he "ripped" her skirt and underwear off her; he ripped her shirt open, exposing her breasts; he grabbed her breasts; she felt his penis up against her vagina; he choked her; she called 911 and yelled to the operator for help; he "ripped" the phone from her hand and threw it aside; he told her that she "wasn't going to leave there alive"; he ripped out a chunk of her hair; and when she unlocked the door, the police officers pulled him off of her.

[¶ 5] Truelove testified the lights were off when he exited the bathroom; he took his clothes off once he left the bathroom and saw her on his mattress looking at him; he lay down next to her and began kissing her; he pulled her skirt and underwear down; he went to insert his penis, but

after she told him no, he stopped; he resumed kissing her and went to take her shirt off, but she got defensive and kicked him in the chin; he slapped her and a scuffle ensued, with both of them having their hair pulled out. He also testified that he didn't intentionally choke her, but did put her in an arm bar to prevent her from running out of the apartment naked. HFP got free, unlocked the door, and exited the apartment.

[¶ 6] At trial, a jury found Truelove guilty of GSI, terrorizing, interfering with a telephone during an emergency call, and aggravated assault.

## II

[¶ 7] Truelove argues there was insufficient evidence to sustain his GSI conviction. In reviewing sufficiency of the evidence challenges, we review the record to determine whether there is sufficient evidence that could allow a jury to draw a reasonable inference in favor of the conviction. *State v. Kinsella*, 2011 ND 88, ¶ 7, 796 N.W.2d 678 (quoting *State v. Wanner*, 2010 ND 121, ¶ 9, 784 N.W.2d 143). "The defendant bears the burden of showing the evidence reveals no reasonable inference of guilt when viewed in the light most favorable to the verdict." *Id.* We do not reweigh conflicting evidence or judge the credibility of witnesses. *Id.*

[¶ 8] Truelove was found guilty of GSI under N.D.C.C. § 12.1–20–03, which states, in pertinent part:

A person who engages in a <u>sexual act</u> with another, or who causes another to engage in a sexual act, is guilty of an offense if . . . [t]hat person compels the victim to submit <u>by force</u> or by threat of imminent death, serious bodily injury, or kidnapping, to be inflicted on any human being.

N.D.C.C. § 12.1–20–03(1)(a) (emphasis added). A sexual act is defined, in relevant part, as "contact between the penis and the vulva . . . [which] occurs upon penetration, however slight. Emission is not required." N.D.C.C. § 12.1–20–02(4). Force is defined as physical action. N.D.C.C. § 12.1–01–04(10). Truelove argues that penetration did not occur and that there was no use of force prior to or during any attempted sexual intercourse.

[¶ 9] There was evidence sufficient to support a reasonable inference of penetration. HFP was asked by defense counsel on cross-examination, "And in your recollection, you remember Mr. Truelove inserting his penis into the opening of your vagina?" HFP responded, "Yeah. In the inner labia and up against the opening." HFP also stated on direct examination that she was familiar with the female genitalia. Her response on cross-examination was consistent with her response on direct when she stated that the "head [of his penis] was within my inner labia up against my vaginal opening." The "sexual act" element of § 12.1–20–03(1)(a) requires only "slight" penetration. N.D.C.C. § 12.1–20–02(4). Thus, because the labia is a part of the vulva and testimony indicated Truelove's penis was "within" HFP's inner labia, there was sufficient evidence on which the jury could conclude penetration occurred.

[¶ 10] Truelove argues that he did not use force until after any alleged sexual act occurred. Section 12.1–20–03(1)(a) requires that Truelove compelled HFP to submit by force to the sexual act. Under a plain language reading of the statute, to "compel" a victim to "submit," the use of force must be either prior to or during the sexual act, but not after. *See State v. Vantreece*, 2007 ND 126, ¶ 18, 736 N.W.2d 428 ("It is the force or physical action by the defendant which must 'compel' the victim to 'submit' to a sex act for a crime to be

committed under N.D.C.C. § 12.1–20–03(1)(a).”). HFP testified that prior to penetration, Truelove laid on top of her against her will, “ripped” her skirt and underwear off her, ripped her shirt open, and grabbed her breasts. *Cf. id.* at ¶¶ 26, 28 (reversing the GSI conviction after concluding that the defendant “did not exert any force to hold [the alleged victim who was pretending to sleep] down or to restrain her from moving”). HFP testified that throughout the incident, she told Truelove to stop. She attempted to get him off her, which was demonstrated by her kick to Truelove’s chin. After HFP kicked Truelove and she became more resistant, Truelove began choking her. The record is unclear whether Truelove choked HFP before or after all sexual contact stopped. To support the verdict, we must only conclude there was sufficient evidence of violence prior to penetration to show that Truelove used force to compel HFP to submit. There was.

[¶ 11] The record contains sufficient evidence to support a reasonable inference by the jury in favor of conviction.

### III

[¶ 12] We affirm the criminal judgment.

[¶ 13] Jerod E. Tufte

Daniel J. Crothers

Lisa Fair McEvers

Jon J. Jensen

Gerald W. VandeWalle, C.J.