# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2020 ND 13

State of North Dakota,                                    Plaintiff and Appellee

     v.

Alexander Blake Lail,                                    Defendant and Appellant

### No. 20190058

Appeal from the District Court of Wells County, Southeast Judicial District, the Honorable Daniel D. Narum, Judge.

AFFIRMED.

Opinion of the Court by VandeWalle, Justice.

Kathleen K. Murray, State's Attorney, Fessenden, ND, for plaintiff and appellee.

Kiara C. Kraus-Parr, Grand Forks, ND, for defendant and appellant.

**VandeWalle, Justice.**

[¶1]   Alexander Lail appealed from a criminal judgment entered upon a jury verdict finding him guilty of two counts of attempted murder. Lail argues there was insufficient evidence to support the guilty verdicts. We affirm.

I

[¶2]   When a defendant challenges the sufficiency of the evidence, "we review the record to determine whether there is sufficient evidence that could allow a jury to draw a reasonable inference in favor of the conviction." *State v. Rai*, 2019 ND 71, ¶ 13, 924 N.W.2d 410 (citing *State v. Truelove*, 2017 ND 283, ¶ 7, 904 N.W.2d 342). "This Court does not reweigh conflicting evidence or judge the credibility of witnesses." *Id.* "[T]he defendant 'bears the burden of showing the evidence reveals no reasonable inference of guilt when viewed in the light most favorable to the verdict.'" *Id.* "A jury may find a defendant guilty even though evidence exists which, if believed, could lead to a verdict of not guilty." *State v. Christian*, 2011 ND 56, ¶ 8, 795 N.W.2d 702 (quoting *State v. Wanner*, 2010 ND 121, ¶ 9, 784 N.W.2d 143). "A '[r]eversal is warranted only if, after viewing the evidence and all reasonable evidentiary inferences in the light most favorable to the verdict, no rational factfinder could have found the defendant guilty beyond a reasonable doubt.'" *State v. Keller*, 2005 ND 86, ¶ 50, 695 N.W.2d 703 (quoting *City of Jamestown v. Neumiller*, 2000 ND 11, ¶ 5, 604 N.W.2d 441).

II

[¶3]   Lail's convictions stem from his attempts at hiring two individuals to kill his wife, Donna Lail, and his former employee, Tyler Schnase. The following evidence was adduced at trial. Alex and Donna Lail were married in 2004 in California. They moved to New Rockford, North Dakota, in 2012 and started Central Plains Restoration, a home restoration business. Shortly after moving to North Dakota, their marriage began to deteriorate. Alex and Donna

separated, and Donna moved to Fessenden, North Dakota. In August 2016, Donna filed for divorce.

[¶4]   Lail continued to operate Central Plains Restoration after Donna Lail had filed for divorce. In July or August 2016, Lail hired Michael Kanwischer to perform miscellaneous work for Lail such as cleaning carpets and spraying ditches. Kanwischer had an extensive criminal history, including spending seven years in the South Dakota State Penitentiary, and was in and out of work. Kanwischer grew up in Fessenden and lived there most of his life. A short time after Kanwischer began working for Lail, Lail told Kanwischer he was getting a divorce and asked "how far [Kanwischer] was willing to go to make money." Lail asked Kanwischer if he could "take out" his wife because, having lived there most of his life, Kanwischer was familiar with Fessenden and the surrounding area and knew where Donna lived in Fessenden. Lail never described the house that Donna lived in to Kanwischer, but Kanwischer testified Lail did not have to because he was familiar with the area and knew which house Donna lived in.

[¶5]   Lail also asked Kanwischer if he could kill Tyler Schnase. Lail wanted Schnase killed because he "knew too much." Lail was indicated in other criminal activity that Lail believed would adversely affect the outcome of his divorce. Schnase had knowledge of and informed law enforcement officers about this criminal activity. Lail brought Kanwischer to Schnase's home and told Kanwischer that was where Schnase lived. Lail told Kanwischer he wanted Donna Lail and Tyler Schnase killed by using the gas line to "blow up" their homes with them inside. Lail offered Kanwischer $35,000 to kill Donna and $20,000 to kill Schnase, but never paid Kanwischer any money. Kanwischer testified that he believed Lail would be able to pay him because Kanwischer was aware that Lail owned property in Florida and California. In total, Lail discussed killing Donna and Schnase with Kanwischer on four different occasions. Lail told Kanwischer he wanted them killed before his divorce was finalized so Donna would not be awarded Central Plains or any of Lail's property through the divorce. Kanwischer accepted Lail's offer, but told Lail it would take time to plan and execute Lail's request. Kanwischer never took steps to kill either Donna or Schnase, but he never told Lail he would not

kill them. And Lail never told Kanwischer to not follow through on his requests.

[¶6]   Tyler Schnase was also a former employee of Lail's. After Schnase had reported Lail's criminal activity to law enforcement officers, Schnase and his girlfriend constantly observed Lail near Schnase's residence and at all hours of the day and night. On one occasion, Lail had been cleaning the house across the street from Schnase's throughout the afternoon and into the evening. After dark, Schnase left his residence in his vehicle. While driving away, Schnase witnessed Lail and another individual walk across the street towards Schnase's home in his rearview mirror. Schnase drove around the block and shined his lights on his home, where he witnessed Lail and the other individual in his driveway. Lail and the other individual ran back to the house across the street. And on two occasions, Schnase witnessed Lail parked in Schnase's driveway while Schnase was not home. Schnase's girlfriend was also present during one of these encounters.

[¶7]   In the summer of 2016, Lail began dating Deanna Neurohr. Neurohr lived in Harvey, North Dakota, in the same apartment building as Michael Kanwischer. Lail would frequently stay at Neurohr's apartment. While staying with Neurohr, Lail made several comments that he wanted Donna Lail and Tyler Schnase killed because of the pending divorce. Lail told Neurohr he wanted their homes burned down with them inside. Neurohr overheard multiple conversations between Lail and Kanwischer about killing Donna and Schnase, including one conversation in which Kanwischer told Lail he went and "staked out" Donna's home in Fessenden. Lail also told Neurohr he had attached a GPS tracking device to Donna's vehicle and showed Neurohr an app on his phone that displayed the device's location. At one point, the device had fallen off Donna's vehicle. Lail went and retrieved the device from the farmer who had found the device in the ditch outside his farmstead.

[¶8]   In December 2016, Jason Saxer began working for Central Plains. In addition to being an employee at Central Plains, Saxer would travel with Lail to Minot and assist him in picking up cars. During one of their trips to Minot, Saxer told Lail he knew people in the Mafia. Lail asked Saxer how much it

3

would cost to "take care of somebody." Lail told Saxer he wanted to find a way to "get rid of" Donna Lail so he could have the business to himself. Lail told Saxer he was concerned Donna would be awarded the business in the divorce. Saxer understood Lail's questioning to mean he wanted Donna killed. Saxer told Lail it would cost approximately $5,000. Lail and Saxer never further discussed hiring someone from the Mafia to kill Donna, and Saxer never contacted anyone about killing Donna. On a separate occasion, Lail traveled with Saxer to Donna's house in Fessenden and mentioned to Saxer that he wanted Donna's house burned down. Saxer understood Lail was implying whether Saxer could burn the house down or if he knew someone that would.

[¶9] Law enforcement officers had been investigating Lail on other criminal matters during the summer of 2016. In July 2016, Donna Lail and her daughter found thumb drives and a notebook belonging to Lail that contained website passwords. On the thumb drives were tracking logs, and one of the websites in the notebook was a website used for tracking people. The thumb drives and notebook were turned over to law enforcement officers as part of their investigation. Lail was arrested on April 25, 2017, after officers learned of Lail's attempts at hiring Kanwischer and Saxer to murder Donna and Schnase. While being detained, Lail attempted to send a note to Donna reading, "Dear Donna, I had no idea that some crazy bastard (Mike) had went to the police telling them some bizarre story." The note was intercepted by jail security. In the documents relating to the investigation of Lail, Mike Kanwischer was referred to as a "source"; his name was never mentioned.

[¶10] Lail was subsequently charged with and convicted by a jury of two counts of attempted murder.

III

[¶11] Lail contends there was insufficient evidence for a jury to infer Lail took a substantial step toward the commission of murder. Under N.D.C.C. § 12.1-06-01(1):

> A person is guilty of criminal attempt if, acting with the kind of culpability otherwise required for commission of a crime, he

4

> intentionally engages in conduct which, in fact, constitutes a substantial step toward commission of the crime. A "substantial step" is any conduct which is strongly corroborative of the firmness of the actor's intent to complete the commission of the crime. Factual or legal impossibility of committing the crime is not a defense, if the crime could have been committed had the attendant circumstances been as the actor believed them to be.

The culpability required for murder is intentionally or knowingly causing the death of another human being. N.D.C.C. § 12.1-16-01(1)(a). Therefore, "'[t]he offense of attempted murder requires the defendant to take a substantial step toward committing the crime of attempting to intentionally or knowingly cause the death of another . . . .'" *Keller*, 2005 ND 86, ¶ 47, 695 N.W.2d 703 (quoting *State v. Ellis*, 2001 ND 84, ¶ 15, 625 N.W.2d 544). However, "a person can be convicted of attempted murder for having taken a substantial step toward commission of the crime of murder even if there never was, in fact, a substantial risk of serious bodily injury or death to another . . . ." *Keller*, 2005 ND 86, ¶ 46, 695 N.W.2d 703; *see also State v. Stensaker*, 2007 ND 6, ¶ 12, 725 N.W.2d 883 ("[T]he substantial-step requirement 'is intended to prevent a conviction based on the accused's mere declaration of his criminal intent.'"). "Whether the accused committed an act sufficient for an attempt is a question of fact." *Stensaker*, at ¶ 22 (citing N.D.C.C. § 12.1-06-01).

[¶12] Other jurisdictions with similar attempt statutes have stated a substantial step is more than just mere preparation, "'yet may be less than the last act necessary before the actual commission of the substantive crime . . . .'" *United States v. Martinez*, 775 F.2d 31, 35 (2d Cir. 1985) (quoting *United States v. Manley*, 632 F.2d 978, 987-88 (2d Cir. 1980)); *State v. Daniel B.*, 201 A.3d 989, 997-98 (Conn. 2019) (quoting *State v. Sorabella*, 891 A.2d 897, 914 (Conn. 2006)); *see State v. Molasky*, 765 S.W.2d 597, 600 (Mo. 1989). To illustrate, in *State v. Daniel B.*, the defendant wanted to hire a hit man to kill his wife whom he was divorcing. 201 A.3d at 991-92. The defendant met with an undercover police officer who was posing as a hit man. *Id.* at 992. The defendant agreed to pay $10,000 for the murder of his wife with $3,800 as a down payment, provided the undercover officer with a detailed description and photograph of his wife and personal information about her, and assisted in formulating a plan

5

on how the murder should be executed. *Id.* at 992-93. The Connecticut Supreme Court held the above stated facts were more than ample evidence from which a jury could have determined the defendant took a substantial step in attempting to murder his wife. *Id.* at 999-1003.

[¶13] Similar events occurred in *State v. Urcinoli*, wherein Urcinoli was incarcerated and offered a fellow inmate, MacPhee, $5,000 to kill his aunt and uncle. 729 A.2d 507, 515 (N.J. 1999). Urcinoli showed MacPhee his bank statement to prove he had the money. *Id.* Urcinoli gave MacPhee descriptions of his aunt and uncle, personal information including addresses and directions to their homes, and described their daily routines. *Id.* Urcinoli also told MacPhee he wanted them killed by planting a bomb under their car or for them to be shot and suggested how the murder scheme could be carried out. *Id.* The New Jersey Supreme Court concluded this was sufficient evidence for a jury to reasonably conclude Urcinoli took substantial steps in attempting to commit murder. *Id.* at 517.

[¶14] In *State v. Molasky*, Molasky was incarcerated. 765 S.W.2d at 598. Molasky and another inmate had a conversation about killing two individuals when the inmate was released. *Id.* at 599. The conversation included a price for the killings, a time when the killings could be done, that Molasky wanted the bodies disposed of, and that the killings were not to take place in front of Molasky's son. *Id.* Molasky did not provide a street address for the victims, where they worked, or pictures of them. *Id.* Molasky and another inmate also discussed killing the same two individuals, in which a price had been agreed upon, an arrangement had been made for payment, it was agreed that a shotgun would be used, and that the killings were not to take place in front of Molasky's son. *Id.* The Missouri Supreme Court concluded these facts were not enough to constitute a substantial step. *Id.* at 602. The court relied on the fact that no money had changed hands, there was no description of the intended victims and no information about them had been provided, no concrete arrangements for payment were made, and similar conversations occurred daily in prison. *Id.* The court held solicitation not accompanied by any other corroborative acts does not constitute a substantial step. *Id.* But the court was diligent in noting that their decision should not be interpreted as suggesting

6

that "solicitation can never be the substantial step necessary to support an attempt charge." *Id.*

[¶15] Here, Lail recruited Michael Kanwischer and Jason Saxer to kill Donna Lail and Tyler Schnase and had multiple conversations with each of them about doing so. In these conversations, Lail said he wanted the murders to take place by using the gas line to "blow up" or burn down Donna's and Schnase's homes with them still inside. Lail offered Kanwischer $35,000 to kill Donna and $20,000 to kill Schnase, and Kanwischer believed Lail had the ability to pay that amount. Lail recruited Kanwischer because he had an extensive criminal history and was in and out of work. Lail never provided Kanwischer with a description of Donna or told Kanwischer where Donna lived, but Lail did not need to because Kanwischer lived in Fessenden for most of his life and knew the area well. Kanwischer already knew where Donna lived without Lail providing an address or location. Lail did, however, show Kanwischer where Schnase lived. Lail also recruited Jason Saxer because he had ties to the Mafia. Lail asked Saxer if he would kill Donna and Schnase or knew someone who would. Lail showed Saxer where Donna lived. Neither Kanwischer nor Saxer ever acted on Lail's requests, but neither ever told Lail they would not, and Lail never asked them not to. Lail himself also took steps towards having Donna and Schnase killed. Lail affixed a GPS device to Donna's vehicle so that he could track her location. Thumb drives containing tracking information were found, as well as a notebook with a password written in it for a website that also contained tracking information. Lail was also constantly seen near Schnase's home and on three occasions on Schnase's property. After he was arrested, Lail sent a note stating "Mike" had come up with a crazy story even though Mike Kanwischer's name was never used in any of the investigation documents. This leads to an inference that Lail had knowledge of who was involved in law enforcement's investigation.

[¶16] Lail attempted to intentionally cause the deaths of Donna Lail and Tyler Schnase. Lail did more than just engage in conversations about having Donna and Schnase killed and took steps beyond that of mere preparation. In murder for hire cases, taking actions that could reasonably lead to the hired individual committing the solicited killing constitute a substantial step in attempting to

commit the underlying crime. Lail's solicitation accompanied by his assistance in formulating a plan to commit murder were concrete steps towards the commission of the crime. Even though Lail's actions may be a floor of what is required for a substantial step, when considered together, these acts constitute a substantial step towards the commission of murder.

[¶17] Lail has failed to show the evidence reveals no reasonable inference of guilt when viewed in the light most favorable to the verdict. After viewing the evidence and all reasonable inferences in the light most favorable to the verdict, we conclude a rational factfinder could have found Lail guilty beyond a reasonable doubt. The evidence was sufficient for a jury to find Lail guilty of attempted murder.

IV

[¶18] We affirm the criminal judgment.

[¶19]  Gerald W. VandeWalle
        Daniel J. Crothers
        Lisa Fair McEvers
        Jerod E. Tufte
        Jon J. Jensen, C.J.

8